**BILLINGS UTILITY CO. v. ADVISORY COMMITTEE, BOARD OF GOVERNORS, et al.**
**No. 12470.**

Circuit Court of Appeals, Eighth Circuit.
March 31, 1943.

A. E. Bryngelson, of Minneapolis, Minn. (Lloyd W. Swords, of Billings, Mont., on the brief), for appellant.

Sigurd Ueland, of Minneapolis, Minn. (Thomas H. Hodgson, of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant as plaintiff seeking to recover from the Federal Reserve Bank of Minneapolis damages in the sum of $500,000 and the further sum of $10,000 as an attorney fee because of the alleged wilful, arbitrary, capricious, tyrannical, oppressive, monopolistic and unjustifiable refusal of the bank to make appellant a loan of $35,000. We shall refer to the parties as they were designated in the trial court. The defendant bank moved for summary judgment of dismissal on the grounds (1) that the United States District Court for the District of Montana, by judgment duly entered, had determined the claim of plaintiff adversely to plaintiff and in favor of the bank and that no appeal had been taken from such judgment, and (2) that the complaint failed to state a claim upon which relief could be granted.

There were attached to the motion authenticated copies of the Montana judgment and of the papers and proceedings on which it was based, supported by an affidavit. The court, after hearing, sustained the motion of the defendant bank and entered judgment of dismissal as to all defendants. There are no disputed questions of fact. Plaintiff alleged in its complaint that it conducted a central heating plant for the production of heat in the City of Billings, Montana; that in 1936 it required some $35,000 additional working capital; that it was unable to obtain financial assistance from any usual source; that it made application to the defendant bank for a loan in this amount; that the security tendered was not only adequate but in excess of what was necessary under the circumstances; that the defendant bank "wilfully, arbitrarily, capriciously, tyrannically, oppressively, monopolistically, and without good or justifiable reason, refused to make such loan," and as a result of such refusal plaintiff was required to liquidate its holdings and go out of business, to its damage in the amount demanded.

It appears from the motion for summary judgment and the supporting documentary evidence that plaintiff in December, 1940, brought an action against the defendant bank in the United States District Court for the District of Montana based upon the identical allegations contained in the bill of complaint in the instant case. In the Montana case defendant moved for dismissal upon two grounds: First, because the complaint failed to state a claim upon which relief could be granted, and second, because the defendant was an inhabitant of the State of Minnesota and therefore the venue of the action was incorrect. The matter was submitted to the Montana court and the motion to dismiss was sustained on both grounds. That court held that the action should be dismissed because, under the Federal Reserve Act as amended, the bank was under no obligation to make any loan, but the making of loans was discretionary with it. The court was of the view that no cause of action was stated. The court also held that defendant could not be sued without its consent in the District of Montana. Bili-

ings Utility Co. v. Federal Reserve Bank of Minneapolis, D.C., 40 F.Supp. 309. From this judgment so entered no appeal was taken.

In the instant case, the court based its judgment upon the grounds (1) that the judgment of the Montana court was res judicata, and (2) that the complaint did not state facts sufficient to constitute a cause of action nor such as to entitle plaintiff to any relief.

In seeking reversal plaintiff contends: (1) That the court erred in granting defendant's motion to. dismiss on the grounds of res judicata because that was an affirmative defense which could not be passed upon by motion; (2) that the court erred in holding that the judgment of the District Court of Montana was res judicata; (3) that the court erred in holding that the statute which formed the basis of plaintiff's action was not mandatory and in holding that the complaint did not state facts entitling plaintiff to any relief.

While plaintiff has named "Advisory Committee, Board of Governors, as Agents," parties defendant in the caption of the complaint, no relief is sought against them, or either of them, nor is any attempt made to state a cause of action against any of them.

■ The motion for summary judgment was based upon Rule 56(b) of the Federal Rules of Civil Procedure and manifestly that part of the motion which sought a, dismissal of the complaint for its failure to state a cause of action was based upon Rule 12(b). Rule 56(b) provides, among other things, that: "* * * A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." The procedure was clearly warranted by this rule. Schwartz v. Levine & Malin, Inc., 2 Cir., 111 F.2d 81; Jones v. Zurich General Accident & Liability Co., 2 Cir., 121 F.2d 761.

■ It is urged that in the Montana court the motion interposed by the defendant did two things: (1) It challenged the sufficiency of the complaint; and (2) it challenged the jurisdiction of the court, and as the court purported to sustain both grounds, its judgment should not be held binding upon the plaintiff because the court was without jurisdiction to do more

than dismiss a cause of action. The motion, however, did not challenge the jurisdiction of the court, but challenged only the venue. It was not contended that the court did not have jurisdiction of the subject matter nor of the parties, but that the defendant could not, without its consent, be sued in Montana. The statute, 28 U.S.C.A. § 112, conferred a personal privilege on the defendant which it might either assert or waive. Wabash Ry. Co. v. Bridal, 8 Cir., 94 F.2d 117; Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437. Plaintiff invoked the jurisdiction of the court and the defendant likewise invoked that jurisdiction when it challenged the sufficiency of plaintiff's complaint. The court therefore had jurisdiction over both the subject matter and the parties, and it decided that the complaint did not state facts sufficient to entitle plaintiff to the relief demanded. The mere fact that the court also held that the defendant could not, without its consent, be sued in the District of Montana not only did not go to the jurisdiction of the court, but in no way prevented it from deciding the merits of the case, the defendant having consented thereto. We do not find it necessary to consider the applicability of Rule 12(b) of the Rules of Federal Procedure. The judgment entered was a final judgment and, not having been appealed from, was conclusive of all questions which were actually litigated, or, indeed, as to such as might properly have been litigated in the action, and hence was a bar to this action involving the same claim and cause of action. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329. It is a fundamental principle of jurisprudence that material questions in issue in a former action, and there judicially determined and conclusively settled by the judgment there, may not again be litigated in a subsequent action between the same parties or their privies. We are of the view that the trial court correctly held that the Montana judgment was a final adjudication of the merits of plaintiff's claim and that it precluded a relitigation of the same cause of action.

■ The lower court, however, did not rest its judgment of dismissal exclusively on this ground but considered the merits of plaintiff's claim. The defendant bank was granted authority to make loans to corporations other than banking institu-

tions and to individual persons. The Federal Reserve Act was amended in 1934 by adding Section 13b thereto, 12 U.S.C.A. § 352a. This section reads in part: "Sec. 13b.(a) In exceptional circumstances, when it appears to the satisfaction of a Federal Reserve bank that an established industrial or commercial business located in its district is unable to obtain requisite financial assistance on a reasonable basis from the usual sources, the Federal Reserve bank, pursuant to authority granted by the Board of Governors of the Federal Reserve System, may make loans to, or purchase obligations of, such business, or may make commitments with respect thereto, on a reasonable and sound basis, for the purpose of providing it with working capital, but no obligation shall be acquired or commitment made hereunder with a maturity exceeding five years."

Plaintiff's complaint is framed on the theory that upon a proper application and showing the defendant bank, under this section of the Federal Reserve Act, was required to make the loan applied for. It is argued that the words "may make loans," appearing in Section 13b(a), should be construed to mean that the bank "must" make loans. This contention, we think, is without merit. The many cautionary and safeguarding expressions contained in the act dispel the thought that Congress intended that its provisions should be construed to make it mandatory on the bank to make such loans. It is only in "exceptional circumstances" and unusual cases, when it appears "to the satisfaction of a Federal Reserve bank," that appellant was "unable to obtain requisite financial assistance on a reasonable basis from the usual sources," that the bank is granted authority to make such loans. The act contains further safeguarding provisions. It is to be guided by the advice of an industrial advisory committee composed of members "actively engaged in some industrial pursuit" within the Federal Reserve district. The loan should be made on "a reasonable and sound basis," and should be made only "pursuant to authority granted by the Board of Governors of the Federal Reserve System." Congress did not assume the responsibility of directing the Federal Reserve Bank to make such loans, but gave it authority to make them subject to many safeguards, limitations and restrictions. Neither in this particular paragraph of the section, nor in the other paragraphs of the section, will be found any words indicating that the bank was required to make such a loan. Giving the word "may" as used in this quoted paragraph its natural meaning, the section is permissive, and the bank was vested with the right, in its judgment, to make or refuse to make such loans. It was permitted to make them, but not required to do so. As pointed out by counsel for defendant in their brief, a reference to other sections of the act discloses that they are permissive rather than mandatory. For instance, Section 10(a), 12 U.S.C.A. § 347a, provides that the Federal Reserve Bank "may make" loans to a group of its member banks. Section 10(b), 12 U.S.C.A. § 347b, provides that it "may make" loans to any member bank on its demand or time notes having maturities of not more than four months. Section 13, paragraph 2, 12 U.S.C.A. § 343, provides that it "may discount" certain notes, drafts and bills of exchange for its member banks. Section 13, paragraph 3, 12 U.S.C.A. § 343, provides that in unusual and exigent circumstances, the Board of Governors of the Federal Reserve System "may authorize any Federal reserve bank * * * to discount for any individual, partnership, or corporation, notes, drafts, and bills of exchange," etc. Section 13, paragraph 4, 12 U.S.C.A. § 344, contains provision that within certain limits, the bank "may discount or purchase" sight drafts. Section 13, paragraph 6, 12 U.S.C.A. § 346, provides that the bank "may discount" certain banker's acceptances. Section 13, paragraph 8, 12 U.S.C.A. § 347, provides that the bank "may make advances" for certain limited periods to member banks on their promissory notes. Section 13, paragraph 13, 12 U.S.C.A. § 347c, provides that the bank, subject to certain limitations, "may make advances" to individuals, partnerships or corporations, etc. If the words "may make loans," as used in Section 13b(a) are to be construed that the bank "must" make loans, the same construction should be given the other similar expressions contained in the act, all of which seem so clearly to be permissive as to make any other construction of them by interpretation or construction judicial legislation. It is observed too that the act contains other provisions indicating what the Federal Reserve banks "must do," as distinguished from what they "may do."

Referring to the rule of construction here contended for, the Supreme Court in Farmers' & Merchants' Bank v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 656,

67 L.Ed. 1157, 30 A.L.R. 635, among other things said: "It is true that in statutes the word 'may' is sometimes construed as 'shall.' But that is where the context, or the subject-matter, compels such construction. Supervisors v. United States, 4 Wall. 435 [18 L.Ed. 419]. Here it does not. This statute appears to have been drawn with great care. Throughout the act the distinction is clearly made between what the board and the Reserve Banks 'shall' do and what they 'may' do."

The Circuit Court of Appeals of the Second Circuit, in Raichle v. Federal Reserve Bank, 34 F.2d 910, 914, 67 A.L.R. 1167, was called upon to consider Section 13a of this act, 12 U.S.C.A. § 348, which provided in part that, "Any Federal reserve bank may, subject to regulations and limitations to be prescribed by the Federal Reserve Board, discount notes, drafts, and bills of exchange." In the course of the opinion it is said: "It is important to note that it is not under any compulsion to rediscount eligible paper, for the words of the act in respect to rediscounting are wholly permissive."

We are satisfied that the bank was not, under the facts stated, as a matter of law, required to make the loan to plaintiff.

It is finally argued that even if not required so to do there might still be a liability because the officers of the bank are public officers and as such may incur liability for an abuse of their discretionary powers. No relief is sought against officers of the bank, and they are employees rather than public officers. Even if they were officers, the power which they were exercising was discretionary, in the exercise of which they would not incur civil liability. Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780. As the functions which these officers must discharge are discretionary, their freedom to act upon any application for credit must be preserved and protected. The Federal Reserve Act contains no provision indicating that Congress contemplated that any Federal Reserve Bank should be subject to damages if its officers should refuse to make a good loan. True, plaintiff has characterized the acts of the officers in so declining as arbitrary, capricious and tyrannical, but that is not an allegation of fact but a statement of the pleader's conclusion, and, as above noted, no damages are sought against the officers. The conduct of the officers is, we think, subject only to the restrictions and limitations contained in the act and when they have acted within those limitations, their conduct is not subject to judicial review.

The judgment appealed from is therefore affirmed.