**MITCHELL et al. v. VILLAGE CREEK DRAINAGE DIST. OF LAWRENCE COUNTY, ARK., et al.**

No. 13335.

Circuit Court of Appeals, Eighth Circuit.

Dec. 23, 1946.

W. E. Beloate, Sr., of Walnut Ridge, Ark., for appellants.

O. C. Blackford, of Walnut Ridge, Ark. (H. L. Ponder, Sr., Smith & Judkins, and Blackford & Irby, all of Walnut Ridge, Ark., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

476

GARDNER, Circuit Judge.

This is an appeal from a summary judgment dismissing appellant's action to confirm title to certain real property in them. The lands involved are certain lots in Minturn, Arkansas, which have been sold to the Village Creek Drainage District for delinquent assessments, and which in turn have been sold by the Drainage District to appellees Homer Shinault and W. H. Golden.

On July 7, 1939, the Chancery Court for the Eastern District of Lawrence County, Arkansas, entered a decree foreclosing the lien of the Village Creek Drainage District for delinquent installments of the assessments of benefits in Village Creek Drainage District of Lawrence County, Arkansas, ordering that the land be sold by the clerk of the court, who was appointed special commissioner for that purpose, and requiring that he make report of sale to the court. Sale was made pursuant to this decree and a report thereof made, and the sale was confirmed to the purchaser, Village Creek Drainage District of Lawrence County, Arkansas, which thereafter deeded the lands here involved in part to appellee Golden and in part to appellee Shinault. Thereafter the State of Arkansas brought suit in the Chancery Court of Lawrence County, Arkansas, to confirm the tax title to this land, alleging that the State had acquired title by forfeiture and sale for nonpayment of taxes for the year 1938. The State had sold the land to Golden and Shinault. Fairbelle Mitchell, the prior owner, intervened in that suit, alleging that the tax sale was void, as was the purported title acquired by Golden and Shinault from the Drainage District.

Shinault and Golden answered the pleading in intervention, setting up title as to the properties claimed respectively by each, acquired by deed from the Village Creek Drainage District. Fairbelle Mitchell, the original intervener, died pending that suit, but the cause was revived in the name of her husband, E. Mitchell, and her daughter, Juanita Wells, she being the sole heir at law, appellants here, who adopted the allegations of the original pleading in intervention and added another ground of alleged invalidity of the title of Shinault and Golden.

In that proceeding the trial court allowed Wells and Mitchell to redeem from the tax sale, holding both the deed from the State and the deed from the Village Creek Drainage District to be void. On appeal, however, the decree was reversed by the Supreme Court of Arkansas, on the ground that even though the deeds to Shinault and Golden from the District were void because executed by an attorney-in-fact without proper authority, this would not confer title in or restore it to the prior owner, and that the right of redemption had been lost because limited to a period of two years from the time of sale, which period had expired before Fairbelle Mitchell offered to redeem. The court said inter alia,

"We conclude, therefore, that Mrs. Mitchell did not have title when she filed her intervention, having lost it through the foreclosure proceedings above referred to, and her daughter, in whose name the proceedings were revived, acquired no greater title or interest by inheritance from her mother than the mother herself possessed." Shinault v. Wells, 208 Ark. 198, 186 S.W.2d 26, 28.

Following the filing of the mandate in the lower court, on further proceedings the court entered a decree dismissing the intervention and cross-complaint, and confirmed the title of appellees Shinault and Golden as against the interveners and the Drainage District. From this decree the interveners appealed but the decree was affirmed. Wells v. Golden, Ark., 191 S.W.2d 251. The Village Creek Drainage District was made a party to the action so as to be bound by the second decree.

The present suit was then commenced in the lower court by appellants, to have the decree of sale of the property for delinquent assessments, the deeds to the Drainage District and to Shinault and Golden cancelled and title to the property confirmed in them. In their answer defendants (appellees here), in addition to a general denial, pleaded that the two decisions of the Supreme Court of Arkansas constituted an adjudication of any right, title or interest which plaintiffs might have in the lands. The lower court held that res judicata pleaded by appellees precluded the right of appellants to any re-

lief and dismissed the action. On this appeal appellants contend that res judicata is not a defense to their action.

Under the Arkansas procedure a plaintiff is required to state all facts constituting his cause of action. Pope's Digest, Laws of Arkansas, Sec. 1409. A defendant, in addition to a general denial, must set up a statement of any new matters constituting a defense, counterclaim or set-off. Pope's Digest, Laws of Arkansas, Sec. 1416. In Corey v. Mercantile Ins. Co., 207 Ark. 284, 180 S.W.2d 570, the Supreme Court of Arkansas in referring to Section 1416, Pope's Digest, among other things said:

"Appellant contends that the word 'must' in the first sentence above quoted should be construed to mean 'may', but we do not think so. Act 54 of 1935, p. 124, amended Section 1194 of Crawford and Moses Digest, relating to the contents of an answer in civil suits. It provided what should constitute a 'general denial' in sub-section 2, and in sub-section 4, it changed the word 'may' to the word 'must', and this was the only change in sub-section 4. We think the legislature meant something by this change, and that was to require a defendant to 'set out in his answer as many grounds of defense, counterclaim or set-off, whether legal or equitable, as he shall have.'"

Appellants were defendants in the cross-complaint in the action brought in the State Court and when they set up their defense it was their duty to set up the alleged invalidity of the foreclosure proceeding. In Corey v. Mercantile Ins. Co., supra, the court held that where a defendant failed to plead an available defense, he could not in a subsequent action between the same parties assert such a defense. The court said:

"We have frequently held that a defendant who fails to set up as many grounds of defense, counterclaim, or set-off as he has loses the right to assert them in a subsequent action between the same parties."

It is elementary that res judicata may be pleaded as a bar not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding but also as to any other available matter which might have been presented to that end. Stevens v. Shull, 179 Ark. 766, 19 S.W.2d 1018, 64 A.L.R. 1258; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 64 S.Ct. 317, 84 L.Ed. 329; Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297; Billings Utility Co. v. Advisory Committee Board of Governors, 8 Cir., 135 F.2d 108; Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 119 F.2d 497; McIntosh v. Wiggins, 8 Cir., 123 F.2d 316; Howard v. Chicago B. & Q. R. Co., 8 Cir., 146 F.2d 316. The rule is succinctly stated in 30 American Jurisprudence, Sec. 179, at page 923, as follows:

"The phase of the doctrine of res judicata precluding subsequent litigation of the same cause of action is much broader in its application than a determination of the questions involved in the prior action; the conclusiveness of the judgment in each case extends not only to matters actually determined, but also to other matters which could properly have been determined in the prior action. This rule applies to every question falling within the purview of the original action, in respect to matters of both claim and defense, which could have been presented by the exercise of due diligence."

Certainly, in so far as appellants raise questions that were litigated or could have been litigated in the State Court actions, they are precluded by the judgments rendered in that litigation. They here contend that they could not plead the defenses now asserted because to do so would have been an attempt collaterally to attack the judgments in the State actions, which they assert could not successfully have been done, and that by bringing an independent action in another court which has jurisdiction they are directly attacking the judgments. If, however, the judgments were void on their face for want of jurisdiction, they could have been attacked collaterally. A judgment entered without jurisdiction is, of course, without validity and has no force either as evidence or by way of estoppel. Greenstreet v. Thornton, 60 Ark. 369, 30 S.W. 347. The Supreme Court of Arkansas has defined a direct attack on a judgment as a proceeding which is instituted for the express purpose of annuling, vacating or modifying it in a suit brought in the same action for that purpose. Hall v. Huff, 122 Ark. 67, 182 S.W. 535. It has defined

a collateral attack upon a judgment "To mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio." Hooper v. Wist, 138 Ark. 289, 211 S.W. 143, 145. If an action or proceeding has an independent purpose and contemplates some other relief, although the overruling of a judgment may be important or even necessary to its success, the attack is collateral. Cassady v. Norris, 118 Ark. 449, 177 S.W. 10, 13. In the Cassady case the court said:

"The primary purpose of the suit was to quiet title. by having the deed held by appellee Norris canceled and set aside. It is a proceeding, not in the original suit in any direct manner to have the judgment vacated and set aside, but is merely an independent proceeding, having as its direct purpose the quieting of the title of appellant by setting aside the deed of appellee Norris. This is the proper characterization of the suit, and it constitutes only a collateral attack upon the judgment of the chancery court under which the land in controversy was condemned and sold."

 Under the decisions of the Supreme Court of Arkansas the present suit is in the nature of a collateral attack upon the judgments, proceedings and deeds sought to be set aside. Be that as it may, it can not, we think, be gainsaid that a judgment void on its face for want of jurisdiction may be attacked either in a direct proceeding or collaterally. The judgments in the litigation in the Arkansas courts constituted res judicata as to all questions that might have been raised by these appellants going to the invalidity of the title of the interveners in that litigation, including the decrees and judgments upon which the deeds conveying title rested.

Under the decisions of the Supreme Court of Arkansas appellants here had no interest in the land and being without interest they can not maintain this action. As said in Stevens v. Shull, supra [179 Ark. 766, 19 S.W.2d 1020]:

"* * * if this were not true, litigation would not end until the parties had no more money nor the ingenuity of counsel in sug-

gesting additional grounds in support of the issue has been exhausted."

The judgment appealed from is therefore affirmed.