## Commonwealth ex rel. Dummit, Attorney General, et al. v. Jefferson County et al.

## Miller, Commissioner of Finance, et al. v. Same.

June 22, 1945.

Eldon S. Dummit, Attorney General, M. B. Holifield and M. J. Sternberg, Assistant Attorneys General, and Percy N. Booth for appellants.

Lawrence S. Grauman, Lewis C. Carroll and William H. Wehrman for appellees.

Opinion of the Court by Chief Justice Tilford—Affirming.

On February 8, 1943, the Commonwealth, acting through its then attorney general, the Hon. Hubert Meredith, attacked in the Franklin Circuit Court the constitutionality of the Act of the 1942 General Assembly (KRS 64.350) requiring payment to the Fiscal Courts of Counties having a population of 75,000 or more of 25% of the official fees collected therein and paid into the State Treasury in accordance with Section 106 of the Constitution. The action was in the form of a declaratory judgment proceeding against the Commonwealth's then Commissioner of Finance, and the Counties of Jefferson, Kenton, and Harlan. It was alleged that while the Act did not become operative until July 1, 1944, it was necessary that its validity be determined at an early date in order that the budgets of the Commonwealth and the Counties named might be properly prepared. The defendants, by joint answer, asserted that the Act was constitutional, and on May 15, 1943, the Court entered a judgment to that effect. That judgment has never been appealed from or set aside.

The above captioned actions were instituted on May 18th and May 21, 1945, respectively, the first by the Commonwealth and its present Commissioner of Finance attacking the Constitutionality of the Act, and the second by Jefferson and Kenton Counties seeking a mandamus

directing the Commissioner of Finance to issue warrants on the State Treasury for the amounts due them under the Act. In each of the actions the issues as to the validity of the Act and the effect of the judgment of May 15, 1943, pleaded in bar by the Counties, were sharply drawn, and in each of them the Commissioner of Finance sought the advice of the Court as to whether he should make the payments required. On final hearing the Court held that the judgment of May 15, 1943, was a full, final and complete determination and adjudication of the rights, duties and liabilities of the parties under KRS 64.350, and precluded a further consideration of the Act's constitutionality. Accordingly, he dismissed the action instituted by the Commonwealth and Commissioner of Finance, and granted the relief sought in the action by the Counties.

On this appeal the Commonwealth vigorously contends that the Act is unconstitutional and that the judgment of May 15, 1943, does not preclude us from so holding, since under our decision in the case of International Harvester Company v. Commonwealth of Kentucky, 170 Ky. 41, 185 S. W. 102, L. R. A. 1918D, 1004, all proceedings, including judgments, under an unconstitutional statute are void ab initio. But we have concluded that while the Court in that case was perhaps justified in holding that a judgment imposing a fine for the violation of a penal statute subsequently held unconstitutional by the Supreme Court of the United States was subject to collateral attack, the Court was in error in making the broad assertion relied on by appellants. As stated in the brief for the appellant, Commissioner of Finance, the ruling in the International Harvester Company case is an unusual one, supported in only a few jurisdictions. In an annotation in 36 A. L. R., page 492, it is said:

"The rule recognized in most of the jurisdictions is to the effect that the judgment or decree on the merits based on an unconstitutional statute is not void but merely voidable and remains effective until regularly set aside or reversed."

And in an annotation following the report of the International Harvester Company case in L. R. A. 1918D, page 1004, it is said:

"It is, of course, the general rule that the judgment of a court of competent jurisdiction rendered in a matter in which it had jurisdiction of the person and subject matter is not subject to collateral attack; but, notwithstanding this general rule, it is settled law that where a person is restrained in his liberty by virtue of a criminal proceeding based upon an invalid statute or ordinance, the validity of such ordinance or statute will be inquired into in a collateral proceeding, usually by habeas corpus."

As pointed out by the annotator, however, the opinion in the International Harvester Company case failed to note that the recognized right to attack an unconstitutional statute collaterally in a criminal proceeding was an exception to the general rule, and that it was the exception and not the rule which justified the Court in permitting the judgment imposing a fine to be collaterally attacked on the theory that the imposition of a fine under an unconstitutional statute was equivalent to imprisonment thereunder.

In American Jurisprudence, Vol. 31, Title "Judgment," sec. 585, Page 185, it is stated:

"Some cases support the rule that a judgment denying a constitutional right, or based upon an unconstitutional statute, is subject to collateral attack. (Citing the International Harvester Company case.) However, the rule recognized in most cases is to the effect that a judgment on the merits based on an unconstitutional statute is not void, but merely voidable, and remains effective until regularly set aside or reversed. Where the violation of a constitutional guaranty is not regarded as rendering the judgment void, it is not subject to collateral attack."

See also Home Construction Co. v. Duncan, Mayor, etc., 68 S. W. 15, 24 Ky. Law Rep. page 94.

It is apparent from the foregoing that this Court's statement in the International Harvester Company case that judgments rendered or judicial proceedings under unconstitutional statutes were void ab initio and of no more effect than judgments rendered by courts without jurisdiction of the parties or the subject matter is contrary to the great weight of authority. It likewise tends to lessen the practical distinction between erroneous and

void· judgments based on the wholesome public policy which facilitates the final determination of disputed issues by decreeing that the former may be attacked only directly, that is, by appeal or in the manner prescribed by Sections 344, 414 and 518 of the Civil Code of Practice, and the latter collaterally only where the fact which rendered them void, namely, the lack of jurisdiction in the Court to render them, appears on the face of the record. See White et al. v. White, 294 Ky. 563, 172 S. W. 2d 72.

In view of these established principles there is no logical basis for holding that a Court with jurisdiction of the subject matter and the parties to the litigation was without power to validly determine the issue merely because that issue happened to be the constitutionality of an Act of the Legislature. Or, should we say in effect that it had the power to adjudge the Act constitutional, if it was in fact constitutional, but no power to determine the issue if the Act was in fact unconstitutional? The answer to this question is obvious.

It is contended by the appellant, Commissioner of Finance that in any event he is not concluded by the judgment of May 15, 1943, since his predecessor in office and the Counties, defendants in the action in which the judgment was rendered, filed a joint answer therein asserting the act's constitutionality, and hence were not adversary parties. He cites the general rule thus framed in the 1942 American Law Institute's Re-Statement of the Law of Judgments, Sec. 82:

"The rendition of·a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon the matters which they did not litigate, or have an opportunity to litigate, between themselves."

While we find no fault with the rule, it is apparent that it has no application here, since the sole interest of the Commissioner of Finance in the litigation was that of an official of the Commonwealth charged with the performance of a ministerial duty by the Act, the constitutionality of which was directly in litigation between the Commonwealth and the Counties for whose benefit the Act required the duty to be performed. It was not necessary that he litigate the question of the Act's constitutionality in order to be bound by the judgment, as that

duty was discharged by the Commonwealth's authorized law officer who instituted the action for that purpose and named the Commissioner of Finance as a proper party defendant. Under these circumstances the position which he took in the litigation was wholly immaterial. In fact, since the Commonwealth was bound by the May 15, 1943, judgment, and hence is precluded from again questioning the Act's constitutionality, it would seem logically to follow that its officials, regardless of whether they were parties to the original action, as well as any others who assume to act for it but whose individual rights are unaffected are estopped from raising the question. See Stone et al. v. Winn et al., 165 Ky. 9, 176 S. W. 933; Commonwealth v. Harkness' Adm'r, 181 Ky. 709, 205 S. W. 787; Ewald's Ex'r and Trustee v. City of Louisville, 192 Ky. 279, 232 S. W. 388; Carroll v. Fullerton, 215 Ky. 558, 286 S. W. 847; Tait, etc., v. Western Maryland Railway Co., 289 U. S. 620, 53 Ct. 706, 77 L. Ed. 1405.

In any event, the present Commissioner of Finance is bound by the May 15, 1943, judgment. In Black on Judgments, Section 582, Vol. 2, Page 877, it is stated:

"According to the generally accepted doctrine the incumbent of an office stands in a relation of privity with his predecessor in the same office; that is, they are connected by successive relationship to the same rights of property. Consequently, the incumbent is concluded by a judgment for or against his predecessor in any suit touching the powers or privileges of the office."

See also Thompson v. United States, 103 U. S. 480, 26 L. Ed. 521; City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 S. Ct. 905, 48 L. Ed. 202.

It follows that since the Commissioner of Finance is bound by the May 15, 1943, judgment, it is his duty to obey it and that he is fully protected thereby.

The objection that the State should not be bound, as a result of the application of the doctrine of res judicata, by an unconstitutional act, and that our conclusion that it may be so bound puts it in the power of an inefficient circuit judge and a corrupt attorney general to bring about such a result, presupposes, not only our own infallibility, but unlimited jurisdiction, neither of which in fact exists. Moreover, it ignores the presumption of constitutionality that attaches to all legislative enact-

ments and the fact that the circuit courts are courts of original and general jurisdiction, whose judgments we have no power to review except where they are brought before us within the time and in the manner prescribed by the Legislature. Had that Body seen fit to do so, it could have vested us with the power to review all judgments involving the constitutionality of its enactments regardless of the lapse of time; and it should not be overlooked that in the early days of this Country's history it was vigorously, though unsuccessfully, contended by many that legislative bodies were the judges of the constitutionality of their own Acts, and that the Courts were without power to interfere. As it is, the Circuit Courts are vested with the power to determine the constitutionality of Legislative Acts, and their judgments are binding upon the Commonwealth to the same extent that they are binding upon the individual litigant. If the Legislative Act attacked in this litigation is unconstitutional, the people are not without remedy, since the Legislature may repeal it.

We do not mean to intimate that the Act in question is unconstitutional, much less that the Circuit Judge who held it constitutional, or the Attorney General who failed to appeal from that judgment are inefficient or corrupt. We merely hold that since all the Counties affected by the Act were parties to the preceding litigation, the wholesome doctrine of res judicata precludes the Commonwealth and those who may be regarded as in privity with it from questioning the Act's constitutionality so long as the judgment of May 15, 1943, holding it constitional remains in force.

Accordingly, so much of the opinion in the case of International Harvester Company v. Commonwealth of Kentucky, supra, as conflicts with the views herein expressed is overruled and the judgments appealed from are affirmed.