## City Of Hickman v. First Nat. Bank In City & State Of New York et al.

May 7, 1948.

Rehearing denied June 25, 1948.

704

D. L. McNeill for appellant.

H. H. Lovett for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The City of Hickman seeks to have its bonds to the amount of $28,000, issued as of March 1, 1929, held invalid. The bonds bear 6% interest and all will mature March 1, 1949. It appears that no sinking fund has been set up to pay them, and the interest has not been paid for many years. The circuit court adjudged the bonds to be a binding obligation of the City and, in accordance with the counterclaim of the defendants, rendered judgment against the City for $33,732.30, and interest, the same being evidenced by semi-annual coupons attached to the bonds. It was further adjudged that the City "duly provide for the collection of an annual tax sufficient in amount to pay the judgment herein rendered against it, and to pay the interest on and provide a sinking fund for the payment of the principal of the $28,000 funding bonds." The City appeals.

The principal point in the case is resolved into one

of res judicata. A judgment was rendered in May, 1929, declaring the indebtedness proposed to be funded to be valid and binding, the City was authorized to issue the bonds, the ordinance covering the same had been legally adopted, and when issued the bonds will be "valid and subsisting obligations of the City of Hickman, taking the place only of the floating indebtedness now outstanding against the said City." The attack made here on that judgment is collateral. It is, therefore, well understood that to succeed it must be shown that the judgment is void, or, as is often said for emphasis, "null and void," for a judgment may not be so impeached for mere errors or irregularities committed in the course of the proceeding by the court in the exercise of its jurisdiction. Commonwealth ex rel. Dummit, Attorney General, v. Jefferson County, 300 Ky. 514, 189 S. W. 2d 604, 167 A. L. R. 512. There was jurisdiction of the parties and the subject matter, so the judgment is conclusive and not subject to collateral attack, and the merits or proof upon which it was rendered may not be reviewed. Lowe v. Taylor, 235 Ky. 21, 29 S. W. 2d 598.

In this case the City bases its challenge upon the rule that a judgment may be invalidated by fraud in the obtainment thereof or because of collusion by the parties. Another argument seems to be, essentially, that under the emphatic provisions of the Constitution any debt which exceeds the maximum limitations of Sections 157 and 158 is void, and that is in and of itself sufficient warrant for holding a judgment validating such debt to be void irrespective of other grounds. We consider the points in inverse order.

The argument that if in fact the constitutional maximum of indebtedness had been exceeded, the subsequent judgment to the contrary is of no effect is not in accord with general principles of the law pertaining to the stability of judgments. The doctrine that a judgment operates as res judicata applies where a constitutional question was presented. Reasons of justice, public policy and public tranquility upon which it rests are as controlling in such a case as in any other. We recently had occasion in Commonwealth ex rel. Dummit v. Jefferson County, supra, 300 Ky. 514, 189 S. W. 2d 604, 167 A. L. R. 512, to say that a judgment on the merits of a case, based upon a statute later declared un-

constitutional, is not void but only voidable, and remains in effect until regularly set aside, and that cannot be done by a collateral attack except in a criminal proceeding. So much the more must it be said where the question was merely to measure a state of facts by a standard established by the constitution.

We have a peculiar and paradoxical case. It is the successful party in the previous litigation who is now attacking the judgment which it obtained. The previous suit challenging the validity of the proposed bonds was filed by a taxpayer, and the City, as the defendant, successfully maintained that they would be valid. The members of the common council and other officers merely represented the municipal corporation in that litigation and it in turn acted in behalf of its citizens; hence the rules as to conclusiveness of judgments are applicable in case of judgments in favor or against municipalities, although there may have been a change in the occupants of the offices. Carroll v. Fullerton, 215 Ky. 558, 286 S. W. 847; 38 Am. Jur., Municipal Corporations, Section 728; Compare Commonwealth v. Harkness' Adm'r, 181 Ky. 709, 205 S. W. 787; Commonwealth ex rel. Dummit, supra, 300 Ky. 544, 189 S. W. 2d 604, 167 A. L. R. 512. This case might well be decided upon this point, namely, that a party cannot have a judgment in its favor set aside as having been fraudulently procured. But the case is of extreme importance to the present taxpayers of the City, which has become swamped with this large debt and accrued interest at a rate now deemed excessive. It will doubtless be more satisfying to the people to waive the point and examine the issues on less technical grounds.

The record with the allegations and bases of the charge of collusive fraud may be summarized. A common law action had been filed by John Pyle to recover judgment against the City for the aggregate of $28,000, of certain warrants issued over a period of years and a previous judgment for more than $17,000 rendered in 1927, in favor of an electric power company for street lighting for several years. He alleged that he was the owner and holder of legal title to all of these evidences of debt "for the purpose of this case." A judgment went by default in his favor. Thereafter the proceedings by the council for the issuance of the bonds to sat--

isfy that judgment were concluded. Then Pyle filed a suit in equity challenging the validity of the proposed bonds. The City filed an answer by the City Attorney. It was verified by the Mayor and Clerk of the Council, and specifically waived service of process. The answer raised appropriate issues. The case was submitted on a stipulation as to the procedure taken, the ordinance, the form of bonds, and the financial condition of the City. The judgment recited jurisdiction of the parties and the subject matter and the sufficiency of the proof, and then adjudged the bonds to be valid. The substance of the allegations of collusion and fraud is that the suit was not in good faith, for Pyle was a member of the council and had voted for the issuance of the bonds; that he had been represented in his common law action, as well as in the equity suit, by a Cincinnati lawyer who was also the attorney for the prospective purchasers of the bonds; that Pyle had forfeited his office as a member of the council in having acquired the evidences of the outstanding debts and as a result a quorum of the council was not present and a majority had not voted affirmatively on the proposed action. It was further alleged that no process had been served on the City, and the Mayor and City Attorney had no authority to enter the City's appearance or file the answer because they had not been so authorized by resolution or ordinance of the council. An issue as to the validity of the debt funded was also raised. This case was submitted on the pleadings and a stipulation which filed the previous records of the common law action in which the default judgment had been rendered in favor of the electric power company, and that in which judgment was rendered against the City for the entire debt of $28,000, as well as the record in the suit in which the bonds were adjudged to be valid. This stipulation also showed the financial condition of the City at the time that judgment was rendered (which is the same as that filed in the original suit) plus an existing bonded debt of the City, $35,379, and outstanding warrants covering the cost of the street intersection improvements amounting to $14,668.97. These additional obligations made the aggregate debt of the City on March 1, 1929, in excess of 5% of the value of the property as assessed for taxation by $7,324.36.

We deduce the essence of the attack upon the previous judgment to be that there was collusive fraud in having failed to disclose the true condition of the City's finances, and that, in fact, the indebtedness funded, or at least $7,324.36, was illegal.

On the hypothesis that the City was in fact the unsuccessful party and concerning the contention of bad faith, it may be said that the motive which prompted the successful party will not be inquired into collaterally. Disman v. Flippins' Adm'r, Ky., 116 S. W. 740. Further, that it is fraud in the manner in which a judgment was obtained that will vitiate it and not the foundation upon which the judgment rests. White v. Hayden's Adm'r, 8 Ky. Op. 498. Concerning the representation of the plaintiff Pyle by the same attorney who was at the time looking after the interests of the proposed purchaser of the contemplated bonds, we observed in King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. 2d 1053, 1054, where the same relations existed: "There is nothing objectionable to such practice, and we mention it only for the purpose of showing the delicacy with which the real question in the cause was handled."

It is apparent that the common law action and the suit testing the bonds were friendly, but that is no fraud upon the court. It was then and is now a common practice and a suit of that character only puts somewhat greater responsibility upon the courts to see that justice is done the public.

There is no merit in the contention that the Mayor and City Attorney had no authority to enter the appearance of the City or defend the suit without express action on the part of the common council authorizing them to do so. That was a duty inherent in their respective offices. Nor is there anything to show that Pyle had in fact or in law vacated his office as a member of the council. It is not shown that he had contracted with that body for himself or as agent of another, as was the case of Napier v. Gay, 264 Ky. 359, 94 S. W. 2d 682. He had merely become the assignee of evidences of debts previously created by contracts with other parties, and that assignment, it was stated, was for the purpose of the

litigation, evidently to avoid having a multiplicity of parties.

The court, in the exercise of unquestioned jurisdiction, adjudged the proof or foundation sufficient and sound. If it were in fact otherwise, the judgment would be only erroneous and not subject to the collateral attack. Starbird v. Blair, 227 Ky. 258, 12 S. W. 2d 693. The fallacy of the contention of illegality is that the debt was created March 1, 1929, when the bonds were issued. The indebtedness had been accumulating over a period of years, due to the failure of the council to provide sufficient revenue annually. The determining factor was the validity of the series of debts at the time they were severally incurred. Randolph v. Shelby County, 257 Ky. 297, 77 S. W. 2d 961; Abbot v. Oldham County Board of Education, 272 Ky. 654, 114 S. W. 2d 1128. The suit was filed and had terminated before the enactment of the Law which places the burden upon the parties to establish legality of debts proposed to be funded. Chapter 22, Acts of 1932, now KRS 66.220. At that time there was a presumption of validity, and the party alleging otherwise had the burden of proving it. City of Frankfort v. Fuss, 235 Ky. 143, 27 S. W. 2d 603; Bond v. City of Corbin, 241 Ky. 663, 44 S. W. 2d 576. The court could not then go behind a judgment on a debt, but had to accept it as conclusive evidence of validity. Griffin v. City of Owensboro, 244 Ky. 201, 50 S. W. 2d 514. Indeed, the stipulation in the present case is the same, except the disclosure of the improvement warrants issued several years before, which added to an existing bonded debt and the warrants proposed to be funded had the effect of bringing the total debt of the city on March 1, 1929, above the maximum permitted by the constitution. That seems to be the only thing not revealed, but it is not now shown that the excess arose when any of the debts funded were created.

None of the contentions forming the basis of the attacks upon the previous judgment, nor all of them together, can be regarded as a fraud upon the court that would justify the nullification of the previous judgment in a collateral or even a direct attack upon it. Fraud which justifies the setting aside of a judgment must relate to jurisdictional matters and not to those matters available as a defense. Greene v. Fitzpatrick, 220 Ky.

590, 295 S. W. 896; Ring v. Freeland, 222 Ky. 147, 300 S. W. 341; Metcalfe v. Metcalfe, 250 Ky. 202, 61 S. W. 2d 1083. But for the satisfaction of the City of Hickman, we have gone further in the consideration of the case, as did the eminent Special Judge, and not only place our decision upon technical grounds but upon the opinion that there was a fair trial and a proper adjudication in the first case.

The court filed an opinion on April 14, 1947, giving his reasons for holding that the City was not entitled to have the former judgment vacated, but the judgment was not entered at that time. It appears the chief counsel for the city was seriously ill and later died, and his partner retired from the case. Then five months later, on September 15th, present counsel for the City moved that the case be continued in order that an accountant might be employed and proof obtained as to the status of the City's financial condition and of the debts which had been funded. The motion was overruled and judgment entered in accordance with the opinion previously delivered. Vigorous argument is made on the appeal that this ruling of the court was error and that the case should be remanded for the taking of evidence. Under the view that the rule of res adjudicata applies and the pleadings do not manifest a right to have the former judgment set aside, the production of further proof would be of no avail, even if the City should be able to establish invalidity of some of the indebtedness which was funded. Another ground for denying this contention is that the case had been pending more than four years and there was no abuse of discretion in the court refusing a continuance.

As we have stated, the interest on these bonds was paid for the first four years only. By a resolution, the City Council undertook to levy a special tax for the sinking fund and interest. We held in City of Hickman v. Helm, 264 Ky. 266, 94 S. W. 2d 665, that the levy of a tax must be by ordinance and not by resolution; hence that the action of the council was not effective. There was no intimation that the council might not make such a levy by ordinance. Nevertheless, it did nothing whatever and now the City has to pay a judgment for accrued interest, which is larger than the principal of the

bonds, as well as the principal itself within less than a year.

In the recent case of Griffin v. Clay County, 304 Ky. 592, 201 S. W. 2d 733, the court held that where public debts are created under authority or permission of the Constitution, that instrument requires that a tax levy be made sufficient to liquidate the valid debts. The court found in the present case that it was manifest that the necessary governmental expenses of the City of Hickman will largely consume its annual revenue under its regular constitutional limits, and not enough will remain to pay the judgment or retire the bonds. The court properly adjudged that the City provide for the collection of an annual tax sufficient to pay the interest on and to create a sinking fund for the payment of the principal, even though an amount in excess of the maximum specified in Section 157 must be levied.

The judgment is, therefore, affirmed.