ELGIN NAT. WATCH CO.

v.

BARRETT et al.

No. 14548.

United States Court of Appeals
Fifth Circuit.

May 31, 1954.

Geo. F. Woodliff, Jackson, Miss., James A. Velde, Chicago, Ill., Henley, Jones & Woodliff, Jackson, Miss., Gardner, Carton, Douglas, Roemer & Chilgren, Chicago, Ill., LeRoy A. Mote, Laurence A. Carton, Chicago, Ill., Ray Garrett, Jr., Elgin, Ill., of counsel, for appellant.

Bernard W. Chill, Jackson, Miss., Frank M. Mize, Forest, Miss., for appellees.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

Appellant, Elgin National Watch Company, is the manufacturer and distributor of nationally advertised watches which are sold under trademarks, names and brands which include the word "Elgin". Appellees, Ray Barrett Jewelers, Inc., and Ray Barrett,[1] were engaged in the retail jewelry business in Jackson, Mississippi. In December, 1949, proceeding under the Mississippi Fair Trade Act,[2] appellant filed its complaint against

---

1. Whether the business is still operating is not shown. Appearance for the corporate defendant was entered in the trial court by its trustee in bankruptcy.

2. Section 1108, Mississippi Code of 1942.

appellees seeking to enjoin them from alleged violations of that Act. The complaint alleged that pursuant to the statute appellant had entered into "fair trade contracts" with certain retail dealers of its watches under the terms of which it was agreed that appellant's watches would not be advertised for sale or resold at a price less than that to be stipulated by appellant. Although appellees had not signed such contracts, they knew of the existence of them and, it was alleged, were bound by them under the terms and provisions of the Mississippi Fair Trade Act.

In their answer to the complaint the appellees did not deny that they were engaged in selling appellant's watches for less than the fair trade prices established by the existing contracts, but, for various reasons urged, denied that such conduct violated the Fair Trade Act. As a further defense, appellees contended that the provisions of the Act are repugnant to the Mississippi Constitution of 1890. The proceedings were conducted on the unchallenged theory that the defendants' dealings with the plaintiff constituted interstate commerce. During the pendency of this action the Supreme Court of Mississippi handed down its decision in the case of W. A. Sheaffer Pen Co. v. Barrett, 209 Miss. 1, 45 So.2d 838, upholding the constitutionality of the Fair Trade Act. Thereafter, on May 8, 1950, the trial court entered a "Final Decree for Permanent Injunction", from which no appeal was prosecuted, perpetually enjoining appellees from advertising, offering for sale, or selling any products manufactured or distributed by appellant under its trademarks at less than the retail prices lawfully stipulated by appellant pursuant to the Mississippi Fair Trade Act.

Approximately one year from the date this final judgment was entered, the Supreme Court of the United States decided the case of Schwegmann Brothers

v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, in which it was held that the Miller-Tydings Amendment to section 1 of the Sherman Act [3] exempted from the prohibitions of that Act only actual contracts and agreements prescribing minimum prices for resale of commodities, valid under State law, and that the sanctions thus accorded were not subject to enlargement by state legislation which purported to bind "nonsigners" of such contracts to maintain the stipulated minimum prices. The Louisiana Fair Trade Law,[4] which was under consideration in the Schwegmann case, is in all material respects similar to the Mississippi Fair Trade Act.

On February 1, 1952, Barrett filed a motion to dissolve the injunction previously granted, assigning as ground for the motion "that the Mississippi Fair Trade Act is unconstitutional as held by the Supreme Court of the United States in the case of Schwegmann [Brothers] v. Calvert Distillers Corporation." The trustee in bankruptcy of the corporate defendant later joined in this motion. While the motion was pending, Congress enacted the McGuire Act [5] as an amendment to the Federal Trade Commission Act [6] declaring that the enforcement of any statute, law or public policy "now or hereafter" in effect in any State extending the operation of fair trade contracts to include nonsigners thereof "shall [not] constitute an unlawful burden or restraint upon, or interference with, commerce."

The district court, on January 16, 1953, entered an order dismissing the injunction which had then been in force for 32 months and the original complaint on which the final decree of injunction had been granted. The reasons given to sustain this ruling, as stated in two letter opinions written by the court, were that the final judgment, having been based on what the court determined to be an unconstitutional statute, was void

3. 15 U.S.C.A. § 1, 50 Stat. 693.

4. La.Gen.Stat., sections 9809.1 et seq., LSA–R.S. 51:391 to 51:396.

5. July 14, 1952, 66 Stat. 632, 15 U.S.C.A. § 45.

6. 15 U.S.C.A. § 41 et seq.

and, since the court had the inherent power to dissolve the injunction and, under Rule 60, Federal Rules of Civil Procedure, 28 U.S.C.A., the power to grant relief from a judgment when it is no longer equitable, the "injunctions should be dismissed and the causes likewise dismissed." As we construe the judgment it has the effect of dissolving the permanent injunction and vacating the prior final judgment.

In support of its argument for a reversal of this judgment, both as to the dissolution of the injunction and the vacation of the judgment, appellant urges that: (1) the former judgment was not void because the Mississippi Fair Trade Act is not unconstitutional; (2) even if the Act is unconstitutional the judgment based upon it is not invalid; (3) the judgment was not subject to modification under Rule 60(b), Federal Rules of Civil Procedure, and (4) the McGuire Act removed any possible ground for relief from the prospective application of the injunction.

 It may be well to recall that no direct constitutional question was determined by the decision of the Supreme Court in the Schwegmann case, supra. The end result of the holding there was that the provisions of the Miller-Tydings Act, supra, did not exempt from the operation of the Sherman Act [7] the provisions of the Louisiana statute which sought to make contracts prescribing minimum prices applicable to nonsigners where the transactions were in interstate commerce. Consequently, it resulted that the distributors of commodities in interstate commerce were not entitled to enjoin the sale of their products at less than the fixed minimum prices, although this may be purported to be authorized by State statute. The power to so adjudge, and indeed the ultimate basis for the holding, may be said in a sense to be dependent upon the provisions of the federal constitution but it by no means follows that the holding in question evidences the unconstitutionality of the State statute. However, we are not inclined to labor the matter, for in the view we take of the case it is not necessary to consider the validity of the Mississippi statute,[8] since we are of the opinion that even if it was, or is, unconstitutional the judgment based upon it is not void.[9] Until such a judgment is reversed or regularly set aside, it is valid and binding upon the parties thereto and their privies. It is the law of the case. The district court recognized this principle in its observation that "the injunctions are in effect until dissolved and one who violates one of the injunctions, while it was in existence would be in contempt of court." Oftentimes vested interests are created by such judgments and positions are irretrievably changed as a result of them. The remedy available to the aggrieved party in such cases is to prosecute a direct appeal from the judgment, just as it is in any other case. Otherwise the matter determined becomes res judicata and subsequent proceedings are subject to the finality which experience of the ages accords the maintenance of such a plea. Such a judgment, even though subsequent decisions prove it erroneous, is not void and, since it is not, is not subject to vacation under Rule 60(b) (4), Federal Rules of Civil Procedure, 28 U.S.C.A.

 The mere fact that the judgment was erroneous does not constitute

---

7. 15 U.S.C.A. § 1 et seq.

8. Compare Grayson-Robinson Stores, Inc., v. Oneida Ltd., 209 Ga. 613, 75 S.E.2d 161, with General Electric Co. v. Packard Bamberger & Co., Inc., 14 N.J. 209, 102 A.2d 18.

9. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Woods Bros. Const. Co., Inc., v. Yankton County, 8 Cir., 54 F.2d 304, 81 A.L.R. 300. See also National Life & Accident Ins. Co. v. Parkinson, 10 Cir., 136 F.2d 506; Commonwealth ex rel. Dummit v. Jefferson County, 300 Ky. 514, 189 S.W.2d 604, 167 A.L.R. 512; In re Newkirk, 114 Fla. 552, 154 So. 323; New York Life Ins. Co. v. Breen, 227 Iowa 738, 289 N.W. 16; and cases collected at 167 A.L.R. 532, et seq. Compare McWilliams v. Blackard, 8 Cir., 96 F.2d 43.

"any other reason justifying relief" [10] from it. Again, appellees' remedy was to appeal directly from the erroneous judgment and have it set aside in due course. Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207. Rule 60(b), supra, was not intended as, and it is not, a substitute for a direct appeal from an erroneous judgment. This rule was not designed to "circumvent the policy evidenced by the rule limiting the time for appeal." Perrin v. Aluminum Company of America, 9 Cir., 197 F.2d 254, 255. The Supreme Court, in Ackermann v. United States, supra, 340 U.S. at page 198, 71 S.Ct. at page 211, pointed out that the choice is not to appeal is but a calculated and deliberate risk. A party cannot be relieved of such choice because hindsight seems to indicate to him that his decision not to appeal was wrong. "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." See also Berryhill v. United States, 6 Cir., 199 F.2d 217. The judgment, unappealed from, evidences a present binding and final adjudication between the parties of their then existing obligations and rights and should not have been vacated.

■■ It does not necessarily follow however that the dissolution and vacation of the prospective operation of the permanent injunction was clear error, as contended by the appellant. Under Rule 60(b)(5), supra, the district court is empowered to relieve a party from a final judgment when "it is no longer equitable that the judgment should have prospective application". Although appellees were not entitled to such relief as a matter of right, if equitable grounds for such relief were established, it was within the sound discretion of the trial court, exercised in the interest of justice, to dissolve the injunction. Such a determination of that court will not be disturbed on appeal, if consistent with accepted legal principles, except for abuse of discretion.[11]

■ It is insisted, however, that the enactment of the McGuire Act, supra, during the pendency of the proceeding dictates the course which the court should have followed, since under that Act it is permissible for "nonsigner" provisions of State statutes to be enforced without violating the federal anti-trust laws. The substance of appellant's argument is that the intervention of the McGuire Act changed the existing law so that the activities previously engaged in by appellees, if resumed, would now be unlawful. The question of whether the McGuire Act cured infirmities in preexisting state fair trade acts, or whether in order to be effective such statutes must of necessity be re-enacted by the State legislative body, has been answered in different fashion by State courts of last resort. Illustrative of these decisions is Grayson-Robinson Stores, Inc., v. Oneida, Ltd., as compared with General Electric Co. v. Packard Bamberger & Co., Inc., referred to in note 8, supra. This, however, is purely a question of State law to be determined by the application of State constitutional provisions. Consequently, a decision by this court as to the present status of the Mississippi statute would amount only to a forecast of the probable holding of the Supreme Court of Mississippi when and if the question was presented to it. Furthermore, the matter is not of any controlling moment here. There is no showing that the defendants intend to engage in conduct contrary to the statute. In addition, there is ground for inference that the corporate defendant is in bankruptcy. In these circum-

---

10. Rule 60(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A.

11. Perrin v. Aluminum Company of America, 9 Cir., 197 F.2d 254; Independence Lead Mines Co. v. Kingsbury, 9 Cir., 175 F.2d 983; Johnson v. Masonic Bldg. Co., 5 Cir., 138 F.2d 817; Assmann v. Fleming, 8 Cir., 159 F.2d 332. Compare United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, where the court stated: "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need * * * a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."

stances, the question appears to be, if not somewhat moot and academic, unworthy of our forecast of Mississippi constitutional law, especially since we can perceive no basis for injury to the appellant even if error could be found to have occurred from the court's dissolution of the prospective effect of the injunction. Dissolution of the injunction does not give appellees a license to engage in unlawful conduct. It merely evidences a determination of the trial court that it is no longer equitable to continue the injunction in force. In the circumstances here, we are not constrained to set aside this ruling.

Appellees' motion to tax appellant with the costs of what is said to be unnecessary record transmitted to this court is denied and costs of the appeal are directed to be taxed against appellees.

The judgment of the court which vacated the final judgment and directed dismissal of the original complaint is reversed and the cause remanded with direction that the final judgment be reinstated. That portion of the order relieving the appellees from the prospective effect of the permanent injunction is affirmed.

Judgment reversed in part and in part affirmed.