STATE OF NEW JERSEY, BY HUGO A. HILGENDORFF, Jr., ATTORNEY-AT-LAW SPECIALLY DESIGNATED BY THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. AMERICAN CAN COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

Argued January 20, 1964—Decided March 16, 1964.

*Mr. John C. Heavey, Jr.* argued the cause for the appellant (*Messrs. Carpenter, Bennett & Morrissey,* attorneys; *Mr. Samuel M. Coombs, Jr.,* of counsel).

*Mr. Charles J. Kehoe,* Deputy Attorney General, argued the cause for the respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Hugo A. Hilgendorff, Jr.,* of counsel and on the brief).

The opinion of the court was delivered by

JACOBS, J.  In 1960 a partial judgment in the sum of $37,950.99 was entered in the plaintiff's favor with the defendant's consent.  In June 1961 a judgment for the plaintiff in the additional sum of $1,896.19 was entered.  No appeal was taken from either judgment within the time allowed, or indeed at any time, and both judgments were fully paid.  Thereafter in July 1962 the defendant moved for relief under *R. R.* 4:62–2.  Its motion was denied by Judge Kingfield and its appeal from the order of denial was certified by us before argument in the Appellate Division.

The plaintiff State of New Jersey's complaint was filed in 1959; it sought custodial escheat under *N. J. S.* 2A:37–29 *et seq.* of unclaimed dividends, interest, wages and other cash obligations in the possession of the defendant American Can Company, a corporation of New Jersey.  In due course the defendant filed an answer which set forth that it possessed unclaimed property in the sum of $39,972.98 which might be

taken into custody by the plaintiff; it asserted no defense to New Jersey's custodial claim except with respect to a small portion thereof ($2,171.32) which it alleged was also being claimed by the State of California. Its answer asserted by way of separate defense that California was an indispensable party and that the amount of its claim should be eliminated from the proceeding. In a pretrial order the defendant stipulated that the State of New Jersey was entitled to custodial escheat of the property in its custody (less the amount being claimed by California) and that a partial judgment to that effect could be entered immediately. On September 16, 1960 findings of fact and conclusions of law were entered by Judge Kingfield; after referring to the defendant's consent to the entry of partial judgment, the conclusions expressly set forth that the State was entitled to custody, that its custodial escheat act was intended to furnish absolute protection against double liability and that to that end the State waived any claim of sovereign immunity. A judgment dated September 16, 1960 incorporated the findings of fact and conclusions of law, directed that the defendant pay the sum of $37,711.30 to the State of New Jersey, and retained jurisdiction for the purpose of granting reimbursement in the event the defendant is subjected to double liability. To correct an inadvertency the September 16th judgment was amended on December 16, 1960 to indicate that California's claim was in the amount of $1,896.19 (instead of $2,171.32 as theretofore asserted) and that partial judgment was in the sum of $37,950.99 (instead of $37,711.30 as theretofore entered). The defendant delivered its check for $37,950.99 to the Treasurer of New Jersey and a warrant for satisfaction was duly filed.

On March 29, 1961 Judge Kingfield passed on the issues which related to the sum claimed by California as well as New Jersey. He determined that the New Jersey court had jurisdiction to adjudicate the matter, that California was not an indispensable party, that New Jersey could take custody under its custodial escheat act without depriving the defend-

ant of due process, and that the defendant could be given absolute protection against double liability by a reservation of jurisdiction in the judgment. In his determination, the Judge expressly incorporated an opinion he had filed in another case where he had referred to *Commonwealth by Gottlieb v. Western Union Tel. Co.*, 400 *Pa.* 337, 162 *A. 2d* 617 (*Sup. Ct.* 1960), then pending on appeal before the United States Supreme Court. 368 *U. S.* 71, 82 *S. Ct.* 199, 7 *L. Ed. 2d* 139. There Pennsylvania had escheated property which was in the possession of Western Union, a New York corporation; the property was also being actively claimed by New York. Judge Kingfield first considered withholding his decision until the Supreme Court's opinion was handed down but then concluded to decide the matter, noting (1) that since Pennsylvania had an absolute escheat act in contrast to New Jersey's custodial escheat act, the Pennsylvania case was not on all fours with the one before him, and (2) that if either party was dissatisfied with his determination, appeal could be taken and a dispositive ruling obtained. On June 16, 1961 he entered judgment for the State of New Jersey in the sum of $1,896.19. His judgment concluded with a retention of jurisdiction for the purpose of granting reimbursement in the event the defendant is subjected to double liability. The defendant did not appeal from the judgment and paid it in full.

On December 4, 1961 the Supreme Court filed its opinion in *Western Union Tel. Co. v. Pennsylvania*, 368 *U. S.* 71, 82 *S. Ct.* 199, 7 *L. Ed. 2d* 139 (1961), reversing Pennsylvania's judgment of escheat in *Commonwealth v. Western Union Tel. Co., supra*. On July 17, 1962 the defendant American Can Company filed a notice of motion under *R. R.* 4:62–2 seeking to be relieved of the escheat judgment against it. The grounds set forth in the notice were (1) the judgment was void, (2) it was entered in violation of due process and the defendant's rights under the Fourteenth Amendment, and (3) for "other reasons justifying relief." After hearing argument Judge Kingfield denied the motion. In attacking his ensuing order, the defendant's brief embodies points which

allege that the judgment was void and was entered without due process, and that the lower court had abused its discretion and had ignored the terms of the judgment in refusing to grant the equitable relief sought by the motion. Although the defendant's motion and the points in its brief refer in terms to but one judgment, there were in fact two judgments entered at different times and involving different elements. They are properly to be viewed and dealt with as separate judgments for purposes of the present proceeding. *Cf. Applestein v. United Board & Carton Corp.*, 35 *N. J.* 343 (1961).

██ The early common law doctrine of escheat was associated with real property; it was an incident of tenure and related to the right of the lord to take for want of a tenant. Later the doctrine was extended to personal property which had no owner or whose owner or owner's whereabouts was unknown. In 1946 the New Jersey Legislature asserted its sovereign power to appropriate such personal property within its borders by the passage of an absolute escheat act. *L.* 1946, *c.* 155; *N. J. S.* 2A:37–11 *et seq.* That act was held to be a constitutional exercise of legislative power and many proceedings were brought under it. *State by Parsons v. Standard Oil Co.*, 5 *N. J.* 281 (1950), aff'd *sub nom., Standard Oil Co. v. New Jersey*, 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951). In 1951 the New Jersey Legislature passed a custodial escheat act which provided an alternative method for taking custody of (and thereafter escheating) personal property. *L.* 1951, *c.* 304; *N. J. S.* 2A:37–29 *et seq.* This act was upheld and hundreds of Superior Court proceedings were prosecuted in accordance with its terms. See *State v. Thermoid Co.*, 16 *N. J.* 274 (1954); *State v. American-Hawaiian Steamship Co.*, 29 *N. J. Super.* 116 (*Ch. Div.* 1953); *cf. State by Parsons v. United States Steel Corp.*, 22 *N. J.* 341, 347 (1956). Thus when in 1959 the State of New Jersey instituted its custodial escheat action against the defendant American Can Company there was no question as to the jurisdiction of the Superior Court to entertain it. Personal jurisdiction was present because there was due service

of process on the defendant and jurisdiction of the subject matter was present because the court had power to determine cases of the class to which the action belonged. See *Abbott v. Beth Israel Cemetery Ass'n,* 13 *N. J.* 528, 537 (1953); *State v. Osborn,* 32 *N. J.* 117, 122 (1960); 7 *Moore, Federal Practice, par.* 60.25 [2], at *p.* 264 (*2d ed.* 1955). When the Superior Court entered the partial judgment of $37,950.99 in 1960 (with the defendant's consent) it clearly had jurisdiction to do so and the same was true when it entered the 1961 judgment in the additional sum of $1,896.19. Neither judgment was in any view subject to attack as being void. See *West Jersey Trust Co. v. Bigham,* 118 *N. J. L.* 160, 161 (*E. & A.* 1937); 7 *Moore, op. cit. supra, par.* 60.25, at *p.* 257 *et seq.* As Professor Moore has pointed out, policy considerations strongly dictate that the concept of void judgments be restricted and that unappealed civil judgments[1] not be dealt with as void except where there has been a plain usurpation of power. In the light of the then prevailing circumstances (including the decision in *Standard Oil Co. v. New Jersey, supra*) the judgments entered by Judge Kingfield, and the hundreds of earlier escheat judgments, may not now fairly be treated as plain usurpations of power and therefore void.

*Western Union* limited the sweep of *Standard Oil* (*cf.* Note, 62 *Colum. L. Rev.* 708 (1962)) by holding that where two or more states are actually seeking to escheat the same property, state courts may not entertain jurisdiction, thus leaving the disputing states to seek original relief in the Supreme Court. It would appear to have no bearing what-

---

[1] We are not at all concerned here with criminal proceedings where judgments have been subjected to post-conviction attack with increasing frequency because of the broadening concepts as to the proper scope of inquiry on *habeas corpus.* See *Johnson v. Zerbst,* 304 *U. S.* 458, 58 *S. Ct.* 1019, 82 *L. Ed.* 1461 (1938); *Fay v. Noia,* 372 *U. S.* 391, 83 *S. Ct.* 822, 9 *L. Ed. 2d* 837 (1963); *cf. State v. Cynkowski,* 10 *N. J.* 571, 576 (1952); *In re Rose,* 122 *N. J. L.* 507, 509 (*Sup. Ct.* 1939). See also *Note,* "Federal Habeas Corpus for State Prisoners: The Isolation Principle," 39 *N. Y. U. L. Rev.* 78 (1964).

ever on the 1960 consent judgment which dealt entirely with property never claimed and not now being claimed by any state other than New Jersey. Nor would it appear to have any effect on the validity of the 1961 judgment which, though it involved property claimed by two states, became final before the decision in *Western Union* and was never appealed from. See *Chicot County Drainage Dist. v. Baxter,* 308 *U. S.* 371, 60 *S. Ct.* 317, 84 *L. Ed.* 329 (1940) ; *Miller v. McCutcheon,* ·117 *N. J. Eq.* 123 (*E. & A.* 1934). In *Chicot County* a federal district court approved a plan of readjustment and enjoined bondholders from enforcing their claims except on the terms provided in the plan. No appeal was taken from the court's decree. Later, the statute under which the district court had acted was declared to be unconstitutional. Bondholders then sued, asserting that the decree barring them was nullified and their contention was sustained in the district court and in the circuit court of appeals. The Supreme Court unanimously reversed, rejecting the notion that the declaration of unconstitutionality voided the legal proceedings which had taken place prior thereto.

In the course of his opinion in *Chicot County,* Chief Justice Hughes relied on principles of *res judicata* and pointed out that by approving the readjustment, the district court had passed on its own jurisdiction and that, while its determination could have been reviewed on appeal, it could not be attacked collaterally as void even though the statute under which the court had acted was later declared unconstitutional.[2] Earlier, in *Treinies v. Sunshine Mining Co.,* 308

---

[2] No question has been raised as to whether the present attack by American Can Company is to be viewed technically as collateral or direct; assuming it to be direct (7 *Moore, supra,* at *p.* 261), the principles expressed in *Chicot County* are nonetheless applicable and dictate rejection of the efforts to vacate the 1960 and 1961 judgments as void. See *Jackson v. Irving Trust Co., infra,* 311 *U. S.* 494, 61 *S. Ct.* 326, 85 *L. Ed.* 297 ; *Elgin Nat. Watch Co. v. Barrett,* 213 *F. 2d* 776 (5 *Cir.* 1954) ; *Miller v. McCutcheon, supra,* 117 *N. J. Eq.* 123; *cf. Comment,* "The Value of the Distinction Between Direct and Collateral Attacks on Judgments," 66 *Yale L. J.* 526 (1957).

*U. S.* 66, 78, 60 *S. Ct.* 44, 84 *L. Ed.* 85, 93 (1939), Justice Reed noted that the principles of *res judicata* apply to all types of issues including issues of jurisdiction over the subject matter as well as the person; and his approach finds solid support in the recent opinion in *Durfee v. Duke,* 375 *U. S.* 106, 84 *S. Ct.* 242, 11 *L. Ed. 2d* 186, 192 (1963). See also *Sherrer v. Sherrer,* 334 *U. S.* 343, 350, 68 *S. Ct.* 1087, 92 *L. Ed.* 1429, 1435 (1948); *Jackson v. Irving Trust Co.,* 311 *U. S.* 494, 503, 61 *S. Ct.* 326, 85 *L. Ed.* 297, 302 (1941); *Davis v. Davis,* 305 *U. S.* 32, 29 *S. Ct.* 3, 83 *L. Ed.* 26 (1938); *Baldwin v. Iowa State Traveling Men's Ass'n,* 283 *U. S.* 522, 524, 51 *S. Ct.* 517, 75 *L. Ed.* 1244, 1246 (1931). Despite the breadth of these expressions, occasional instances may be found where *res judicata* has flexibly given way to counter policies which were deemed more important and thus adequate to justify collateral attack upon the jurisdictional determination; they may be found collected in *Duke v. Durfee,* 308 *F. 2d* 209 (8 *Cir.* 1962), reversed 375 *U. S.* 106, 84 *S. Ct.* 242, 11 *L. Ed. 2d* 186 (1963), but examination readily discloses that they have little or nothing in common with the situation at hand.[3] Here the jurisdictional issue was fairly tried and determined adversely to the defendant which then deliberately chose not to seek further review though the availability of appeal and the pendency of *Western Union* were specifically called to its attention. *Cf. Angel v. Bulling-*

---

[3] See, *e. g., Kalb v. Feuerstein,* 308 *U. S.* 433, 60 *S. Ct.* 343, 84 *L. Ed.* 370 (1940), where a foreclosure decree against a farmer was subjected to collateral attack in a proceeding under a special bankruptcy act dealing with farm debtors and their property; the court noted that while it was generally true that a judgment of a court of competent jurisdiction bears a presumption of regularity and is not subject to collateral attack, Congress may by specific bankruptcy legislation "create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." 308 *U. S.,* at *pp.* 438–439, 60 *S. Ct.,* at *p.* 346, 84 *L. Ed.,* at *p.* 374. See also Boskey & Braucher, "Jurisdiction and Collateral Attack," 40 *Colum. L. Rev.* 1006, 1016 (1940).

*ton,* 330 *U. S.* 183, 189–190, 67 *S. Ct.* 657, 91 *L. Ed.* 832, 836–837 (1946). The policies underlying the principles of *res judicata* are fully applicable and no significant countervailing policies have been brought to our attention. *Cf. Restatement, Judgments* § 10 (1942) ; *Restatement, Conflict of Laws* § 451(2) (*Supp.* 1948).

▮ The defendant's brief advances the contention that "the judgment entered in the court below authorizing the taking into custody of monies by the State of New Jersey was entered without due process of law." This contention lacks merit. The defendant was duly served with process, it consented to the entry of the 1960 judgment, and it took no appeal from the 1961 judgment. Constitutional issues are "waivable" (*cf. Roberts Elec., Inc. v. Foundations & Excavations, Inc.,* 5 *N. J.* 426, 429 (1950)) and they are the proper subject of principles of *res judicata.* See *Chicot County Drainage Dist. v. Baxter, supra,* 308 *U. S.* 371, 60 *S. Ct.* 317, 84 *L. Ed.* 329; *Miller v. McCutcheon, supra,* 117 *N. J. Eq.* 123. Due process does not grant the "right to litigate the same question twice." *Baldwin v. Iowa State Traveling Men's Ass'n, supra,* 283 *U. S.,* at *p.* 524, 51 *S. Ct.,* at *p.* 517, 75 *L. Ed.,* at *p.* 1246. Judge Kingfield expressly determined that judgment of custodial escheat with appropriate reservation of jurisdiction would in nowise violate the due process clause. When the defendant chose not to appeal from the judgment it deliberately subjected itself to the binding effects of *res judicata* and its underlying policies of finality and stability. See *Baldwin v. Iowa State Traveling Men's Ass'n, supra,* 283 *U. S.,* at *pp.* 525–526, 51 *S. Ct.,* at *p.* 518, 75 *L. Ed.,* at *p.* 1247; *cf. Ackermann v. United States,* 340 *U. S.* 193, 71 *S. Ct.* 209, 95 *L. Ed.* 207 (1950). In now seeking to be relieved of the effects of the 1961 judgment, as well as the 1960 judgment, the defendant must necessarily rest on provisions in the judgments themselves or in the applicable court rules enabling such exceptional relief. See *R. R.* 4:62–2. This it has sought to do under the final point in its brief where it contends that the lower court "abused its

discretion and ignored the terms of the very judgment sought to be vacated in refusing to grant to American the equitable relief it sought."

It is entirely clear that the lower court did not ignore the terms of either the 1960 or 1961 judgment. Both judgments contained reservations of jurisdiction to enable reimbursement in the event of double liability. The defendant has not been subjected to any double liability and is not claiming reimbursement because of any double payment. *Cf. Solimine v. Hollander,* 129 *N. J. Eq.* 264, 273 (*Ch.* 1941). So far as the property dealt with in the 1960 judgment is concerned, no state other than New Jersey has ever made or is now making claim. The remaining property was the subject of a claim heretofore made by California but so far as we know California may no longer be pressing its claim; at oral argument counsel for the defendant acknowledged that he had no information indicating that California had taken any action within the past few years or that it has any current interest in the matter. *Cf. State by Van Riper v. American Sugar Refining Co.,* 20 *N. J.* 286 (1956). If California has any current interest it will presumably seek relief in accordance with *Western Union,* joining New Jersey and the defendant as parties to a proceeding before the Supreme Court. In such event, the defendant will clearly be in no jeopardy of double liability or payment. Indeed, it appears to us that in no event can the defendant be placed in any real danger in view of the reservation of jurisdiction; presumably, that was a factor leading the defendant to its conclusion that no appeal should be taken from the entry of the 1961 judgment.

*R. R.* 4:62–2 authorizes relief from final judgments as therein provided. Motions under the rule are addressed to the discretion of the court and are governed by principles of equity and justice. See *Greenberg v. Owens,* 31 *N. J.* 402, 405 (1960). If in the instant matter equity and justice called for the reopening of either of the judgments we would not hesitate to take appropriate action under subdivision (f) of *R. R.* 4:62–2. See *Klapprott v. United States,* 335 *U. S.*

601, 614–615, 69 *S. Ct.* 384, 93 *L. Ed.* 266, 277 (1949); *Wilford v. Sigmund Eisner Co.,* 13 *N. J. Super.* 27, 33 *(App. Div.* 1951); *Hogan v. Hodge,* 6 *N. J. Super.* 55, 59 *(App. Div.* 1949); *cf. Hodgson v. Applegate,* 31 *N. J.* 29, 43 (1959); see generally *Ackermann v. United States, supra,* 340 *U. S.* 193, 71 *S. Ct.* 209, 95 *L. Ed.* 207; *Berryhill v. United States,* 199 *F.* 2d 217 (6 *Cir.* 1952); *Doyle v. Chase Manhattan Bank,* 80 *N. J. Super.* 105, 124–127 *(App. Div.* 1963). However, as we view the situation, all the pertinent considerations favor the State rather than the defendant. The *res judicata* policies of finality and stability are specially applicable since there are admittedly many hundreds of similar escheat judgments outstanding in addition to those entered against the defendant. The claims of New Jersey, as the state of incorporation, to escheat the funds for the benefit of all of its citizens, were clearly superior to those of the defendant, which, though it originally had custody of the funds, had "no moral or legal claim to their retention." *State by Van Riper v. American Sugar Refining Co., supra,* 20 *N. J.,* at *p.* 297. After the defendant turned the funds over to the State in accordance with the 1960 judgment by consent and the unappealed 1961 judgment, its only interest was in its own protection against further liability and payment. It was afforded that protection in ample measure by the specific terms of the judgments and it is indeed difficult to find any sound reason for the making of its present application. The passage of time has served to confirm that New Jersey is the only State interested in the funds dealt with in the earlier judgment and *Western Union* now affords additional protection against any possibility of the defendant's being caught between conflicting state judgments with respect to the funds dealt with in the later judgment. The lower court's denial of relief under *R. R.* 4:62–2 was well within its discretionary authority and its order will not be disturbed.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.