JACKSON, ATTORNEY GENERAL, ON BEHALF
OF THE UNITED STATES, AND AS SUCCESSOR
TO THE ALIEN PROPERTY CUSTODIAN, *v.*
IRVING TRUST CO., EXECUTOR, ET AL.

No. 75. Argued December 19, 1940.—Decided January 6, 1941.

*Assistant Attorney General Shea,* with whom *Solicitor General Biddle* and *Messrs. Francis J. McNamara, Melvin H. Siegel,* and *Richard H. Demuth* were on the brief, for petitioner.

496

*Mr. Nathan L. Miller,* with whom *Messrs. Leonard B. Smith* and *Selden Bacon* were on the brief, for respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

In a suit brought in the District Court of the United States for the Southern District of New York under

§ 9 (a) of the Trading with the Enemy Act,[1] a decree was entered on December 30, 1929, directing payment to the plaintiffs of a stated amount out of the property of a German corporation which had been seized by the Alien Property Custodian. There was no appeal and the amount awarded was paid.

In 1938 the United States moved upon affidavits to set aside the decree, contending that the court had been without jurisdiction. The District Court granted the motion upon that ground. 27 F. Supp. 44. The Circuit Court of Appeals reversed and reinstated the original decree. 109 F. 2d 714. Certiorari was granted. 310 U. S. 621.

It appears that the suit had been brought in 1927 by John S. Sorenson and Thorlief S. B. Nielsen, as surviving partners of the firm of Crossman & Sielcken. The bill of complaint alleged that plaintiffs and Hermann Sielcken, the deceased partner, were citizens and residents of the United States; that the partnership had its principal place of business in New York City and had not at any time been a "resident" in enemy territory and had not been an enemy or ally of enemy within the meaning of the Trading with the Enemy Act; that Zentral-Einkaufs-Gesellschaft, m. b. H., a German corporation described as Z. E. G., was indebted to Crossman & Sielcken for cargoes purchased by the latter for Z. E. G. during 1915 and consigned to neutral ports where they had been seized and condemned by the British Government; and that the Alien Property Custodian had assets of Z. E. G. which had been seized under the Trading with the Enemy Act. The bill prayed for a decree establishing the debt claimed by the plaintiffs and ordering its payment to them out of the property so held. The bill declared that it was filed pursuant to § 9 (a) of the Trading with

---

[1] 40 Stat. 411, 419, as amended, 42 Stat. 1511.

the Enemy Act and that the court had jurisdiction to entertain it by virtue of the express terms of that provision.

The defendants, the Alien Property Custodian and the Treasurer of the United States appeared generally. They moved to dismiss the bill on the grounds (1) that it appeared affirmatively therefrom that no debt was owing to the plaintiffs from any enemy whose property had been seized and was then held, (2) that it appeared affirmatively that no debt was owing to the plaintiffs by Z. E. G., and (3) that the plaintiffs had not stated facts sufficient to entitle them to equitable relief under the provisions of the Act. The defendants also answered denying knowledge as to the averments of the bill which set forth the citizenship and residence of the plaintiffs and Sielcken and the *locus* of the partnership, and those concerning the transactions said to have given rise to the debt. As an affirmative defense, it was alleged that there were prior claims to the seized property of Z. E. G. The latter being joined as defendant also answered putting in issue allegations relating to the claim and setting up various affirmative defenses. One of these asserted that plaintiffs did not have title to the cause of action, since the Alien Property Custodian was alleged to have seized the assets of Crossman & Sielcken as an enemy firm because Sielcken resided in Germany and became an enemy. Other defenses of Z. E. G. averred that the partnership of Crossman & Sielcken had been dissolved through the outbreak of the war, and that the claim thereupon had passed to Sielcken and upon his death to his German executors who had entered into an arbitration agreement with Z. E. G., and that the arbitrators had found no liability on its part.

On the trial, at the close of the evidence on both sides, defendants moved to dismiss upon the ground that plaintiffs had failed to prove their case. The District Court denied the motions and held that the partnership had

not been dissolved by the outbreak of the war and that Z. E. G. was indebted as claimed; that the executors of Sielcken in Germany had no authority to dispose of a partnership asset which had come into existence long prior to our entering the war; and that plaintiffs were entitled to a decree for the relief prayed for. Decree was entered accordingly.

While the present motion to vacate the decree was upon the sole ground that the court had no jurisdiction to enter it, there was some attempt in the affidavits on the motion to show that the decree was collusive. But, as the Circuit Court of Appeals observed, there was no bill of review presenting such a question and no justification for setting aside a decree upon that ground merely upon affidavits. The Government expressly disclaims any challenge to that ruling. As to the question of jurisdiction, the Circuit Court of Appeals held that the District Court upon the trial of the suit was obliged to resolve disputed questions of fact and that its decision that the jurisdictional facts were established could not be attacked collaterally. *Stoll* v. *Gottlieb,* 305 U. S. 165; *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371.

Petitioner thus states the question upon which review is asked in this Court: "Whether an unappealed judgment against the Alien Property Custodian under Section 9 (a) of the Trading with the Enemy Act, on a claim to recover for a debt, may be set aside for want of jurisdiction on the ground that the beneficial owner of the claim sued on was an 'enemy,' as defined by that Act."

Petitioner argues that the judgment was void since it was not authorized by the Trading with the Enemy Act and thus the suit was a suit against the United States to which the United States had not consented and over which, therefore, the District Court had no jurisdiction.

We hold the argument untenable. There is no question here of the sort presented in *United States* v. *United States Fidelity & Guaranty Co.*, 309 U. S. 506, of want of consent to be sued or of an attempt on the part of officials to waive the sovereign immunity. The United States had expressly consented in § 9 (a) of the Trading with the Enemy Act that suits might be brought by a non-enemy claimant to have his claim against an enemy debtor satisfied out of the latter's property held by the Alien Property Custodian. The pertinent parts of the section are set forth in the margin.[2]

---

[2] "Sec. 9 (a). Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: *Provided*, That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the

The statute provides that any person not an enemy or ally of enemy [3] "claiming" any interest or right in the property seized or to whom any debt may be owing by the alien enemy may sue the Custodian and Treasurer. He may sue "to establish the interest, right, title, or debt so claimed." The court is to determine whether his claim is established. If the claim is "so established," the court is to order the delivery of property or payment "to which the court shall determine said claimant is entitled." Nothing could be clearer than that in a suit so brought the court is to determine every issue necessary to the establishment of the claim.

The suit in question was precisely within the terms of the Act. It was a suit by plaintiffs Sorenson and Nielsen as surviving partners, in which they alleged their citizenship and residence in the United States (and this does not now appear to be questioned), to recover a debt claimed to be owing to the firm by an enemy corporation. The allegations of the bill of complaint met the requirements of the statute in every respect. It

---

case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment; conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. . . ."

[3] Section 2 of the Trading with the Enemy Act provides:

"Sec. 2. The word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory."

set forth the plaintiffs' claim, their non-enemy status, the transactions out of which their claim arose, and that they had given notice of the claim as the statute required. The denials of the answers and the affirmative defenses presented issues which the court was competent to try. All these issues were necessarily before the court in the performance of its statutory duty to determine whether the plaintiffs had established their claim to the debt. Thus, the status of the plaintiffs, of the partnership, and of Sielcken, the deceased partner, the effect of his death, his interest in the assets under the partnership agreement, the nature of the transactions with Z. E. G., whether it was indebted to the firm and whether the surviving partners were entitled to recover the debt, that is, every issue which could be litigated in the suit was by the very terms of the Act submitted to the determination of the court.

Petitioner says that the jurisdictional point was not contested or adjudicated at the trial. That, while the defendants claimed that Sielcken was a resident of Germany at the time of the war, that he owned all the capital of the partnership, and that upon his death it was the duty of the surviving partners to pay over to his executor the capital, property and business of the firm, it was not suggested that these facts raised the jurisdictional issue. Petitioner urges that the District Judge held that while Sielcken may have been an 'enemy' as defined in the Act, 'he did not become an enemy within the meaning of the dissolution doctrine, at least so far as transactions occurring prior to the war were concerned.' And to support the argument, petitioner relies upon a colloquy between the District Judge and counsel in the course of the trial. Respondent rejoins that in the same colloquy the District Judge observed that 'the partnership agreement was between American citizens' and that it did not follow from the war and the provisions of the Trading with the Enemy Act that Sielcken was

'an alien enemy in the sense that a national of the country with which we are at war is an alien enemy.' And the District Judge further observed that the status of the property in question 'had become fixed prior to the war' and that it was not a consequence of the war that the partnership was so far dissolved 'as to change the rights with respect to that property.' From any point of view, the colloquy affords no adequate basis for petitioner's contention. We agree with the Circuit Court of Appeals that when the dismissal of the suit was asked by counsel for the Government on the ground that Sielcken was an enemy under the Act, the issues thus raised were the same as those which pertained to the so-called 'jurisdictional' question of right to sue under the Trading with the Enemy Act.

By the provisions of that Act the jurisdiction of the District Court attached when the suit was brought upon the claim which the plaintiffs as non-enemy claimants set forth. However the issues were labeled the court was authorized to determine them. *Texas & Pacific Ry. Co.* v. *Gulf, C. & S. F. Ry. Co.*, 270 U. S. 266, 274; *Stoll* v. *Gottlieb, supra*, p. 171. And whether a particular issue was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree. *Cromwell* v. *County of Sac*, 94 U. S. 351, 352; *Grubb* v. *Public Utilities Commission*, 281 U. S. 470, 479; *Chicot County Drainage District* v. *Baxter State Bank, supra; Sunshine Anthracite Coal Co.* v. *Adkins*, 310 U. S. 381, 403. If the District Court had erred in dealing, or in failing to deal, with any issue thus involved, the remedy was by appeal and no appeal was taken.

The judgment of the Circuit Court of Appeals is

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration and decision of this case.