**INTERTYPE CORPORATION,**
Plaintiff-Appellee,

v.

**CLARK–CONGRESS CORPORATION,**
Defendant-Appellant.

No. 11350.

United States Court of Appeals
Seventh Circuit.

Jan. 24, 1957.

As Modified Feb. 15, 1957.
Rehearing Denied Feb. 20, 1957.

Don H. Reuben, Saul Epton, Howard Ellis, David Jacker, Chicago, Ill., for defendant-appellant. Kirkland, Fleming, Green, Martin & Ellis, Epton, Scott, McCarthy & Epton, Chicago, Ill., of counsel.

Perry W. Morton, Asst. Atty. Gen., Robert Tieken, U. S. Atty., Chicago, Ill., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., for amicus curiae.

Sherwood K. Platt, Charles L. Stewart, Jr., Chicago, Ill., for plaintiff-appellee. Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

The pertinent facts involved in this appeal have been discussed at length in two previous decisions of this court, United States v. Advertising Checking Bureau, Inc., 7 Cir., 204 F.2d 770, and Intertype Corporation v. Clark-Congress Corporation, No. 11018 of this court, reported in 219 F.2d 90. At the risk of a charge of undue repetition, however, we think it advisable to discuss the evidence briefly.

This is an appeal from a judgment entered in the district court in a suit by plaintiff against Clark-Congress Corporation, for damages claimed to have been incurred in plaintiff's forced removal from certain building space, leased by it from defendant, when the Government took possession of the area. The United States was originally joined as defendant, but, during the course of the proceeding, was dismissed, with prejudice.

The suit arose out of the following essential facts, which are the same as those presented in the counterclaim of Intertype against defendant in the former litigation, reported in 219 F.2d 90. Indeed, it is so stipulated. Defendant owns the Rand-McNally Building on South Clark Street in Chicago. In June, 1951, plaintiff was a tenant of part of the building, under lease running to December 31, 1958. Other tenants occupied other portions of the premises. The Government at that time desired space in the building for the use of its Bureau of Public Debt. Accordingly, on June 22, 1951, defendant leased to the United States the then available portions of the building, for the period ending December 31, 1952, and, thereafter, for five years demised the entire building, with an option to renew for an additional five years. Under the lease, the United States had the right to alter or remodel the building, provided its activities in so doing were not detrimental to or inconsistent with the rights of the tenants. The lease recited that it had been entered into in lieu of condemnation proceedings.

Following execution of the agreement, the Government began to negotiate with all tenants, requesting them to find quarters elsewhere and to surrender their leased premises. On October 31, 1951, the Government initiated active steps to remodel the building in order to meet its needs, continuing this work until completion in the middle of the year 1952. By December, 1951, all tenants had removed from the building, except plaintiff and two others, with the latter of which we are not now concerned. On December 12, 1951, the Government filed suit in the district court to condemn, *inter alia,* the premises of plaintiff and those of the two co-tenants. Plaintiff surrendered its premises approximately thirty days later.

When the time for pleading in the condemnation suit arrived, plaintiff filed a counter-claim against defendant herein, the Clark-Congress Corporation, discussed in our earlier opinion, the averments of which, as we have noted, it is stipulated, were substantially the same as those of the complaint in this proceeding. Upon this counter-claim judgment was entered against Clark-Congress. Upon appeal the judgment was reversed and the cause remanded with directions to the district court to grant the motions interposed to strike the counter-claim. We held that, under the acts of Congress and the applicable rules of procedure, the district court had the right to entertain and dispose of the counter-claim of Intertype against Clark-Congress in the condemnation case, but that, upon a consideration of the evidence, inasmuch as it appeared that the items for which plaintiff was endeavoring to recover from Clark-Congress represented elements sought to be recovered in addition to the just compensation allowable under the eminent domain laws, plaintiff might not thus increase its compensation and that the counter-claim against defendant must fall.

At that time the present suit was pending. It represented an attempt to recover exactly the same items that

plaintiff had attempted to recover in the counter-claim in the condemnation suit. Following reversal of the judgment on the counter-claim, and remandment, the parties proceeded to trial in this cause. The district court, upon a stipulation of facts, entered substantially the same findings it had entered in the trial of the counter-claim, judgment upon which we had reversed. The specific items allowed on the counter-claim originally, were costs incurred in moving from the premises, compensation to officers and wages of employees engaged in effectuating removal, miscellaneous out-of-pocket expenses incurred in connection with moving, and loss of profits for two weeks when business was suspended, aggregating $41,498.98. In the instant trial, the same items were demanded and allowed as a part of the judgment entered, and, in addition, items bringing the total to $59,098.98 were included consisting of additional janitor service in the new space acquired, additional cost of janitor supplies in the same, additional cost of window washing in the new quarters, and painting and decorating offices therein three times. It is significant that, though plaintiff insists that it is seeking to recover damages incurred because of an actual or constructive eviction of plaintiff from its premises by Clark-Congress, each and all of the items for which judgment was entered consist only of costs incurred because of the necessitated removal, such as the actual cost of moving and other similar consequential results.

Upon appeal the defendant contends that the former judgment dismissing the counter-claim is *res judicata* of the rights of plaintiff to recover in the present suit, and, further, that, upon the merits, inasmuch as plaintiff sought and was allowed damages here for the acts of the United States performed in its attempt to obtain office space for its officials, since whatever was done was done by the Government, in pursuance of its right of eminent domain, which the defendant was powerless to prevent and which the Government as sovereign was entitled to pursue against any and all private parties, including both plaintiff and defendant, the proof does not sustain a claim upon which relief can be had.

█ We agree with plaintiff that the principle of *res judicata* precludes relitigation of the issue presented in this case. That doctrine, of course, prohibits the parties from relitigating causes of action previously adjudicated. Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970; Postal Telegraph Cable Co. v. City of Newport, Ky., 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215, and, obviously, the bar extends not only to matters actually adjudicated but also to such matters as might have been there litigated, Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832.

█ The parties here are the same as those to the counterclaim of which we previously disposed. The cause of action is the same. The items of damages sought to be recovered are the same, with the exception that in the present case some additional matters of the same character are included which might have been included then. Consequently, all the items are within the doctrine of *res judicata*. We held that none of these matters was compensable by the sovereign; that the counter-claim represented an unauthorized attempt to recover from the landlord something in addition to the just compensation permitted upon the exercise of eminent domain by the Government, and to hold the landlord for something which it could not have prevented against the Government's attempt to subject the property to its right of eminent domain. We adhere to that ruling.

In this connection plaintiff contends that the facts are different and refers to a letter, which is not a part of the record, representing the opinion of an officer of the United States to the effect that the original lease to the United States by the present defendant had not been made in compliance with the laws of the United States. For the reasons we shall hereafter show, even were this

a part of the record, it would not, in the slightest degree, we think, bear upon the validity of our previous determination that the counter-claim was insufficient because it represented an attempt to engraft upon just compensation from the Government additional items against defendant based on the Government's actions. We think there is nothing in the record to prevent the full applicability of the doctrine of *res judicata*.

Plaintiff contends also that we did not in any way adjudicate the civil rights and civil liabilities between landlord and tenant, but, in our view, these rights have nothing whatever to do with a determination of the merits of the claim made against defendant.

Irrespective, however, of any question as to *res judicata* and *stare decisis*, we think there is no question as to the correctness of our decision that plaintiff did not in its cross-claim or in the present suit state a claim upon which relief could be had.

 We should keep in mind the nature of the right of eminent domain. It may be effected by a physical taking, by consent or by condemnation. The Government has frequently properly exercised the power to take private property in cases where it has not instituted condemnation proceedings. United States v. Merchants Transfer & Storage Co., 9 Cir., 144 F.2d 324. Thus, in Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328, where an Army officer had taken possession of part of plaintiff's property without obtaining plaintiff's consent or instituting condemnation proceedings, the court held that "the taking was under the sovereign power of eminent domain." And, in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, the Government had appropriated without compensation, the use of certain of plaintiff's land in connection with its airport. The plaintiff brought suit to recover compensation. The Supreme Court found that there was a taking compensable under the Fifth Amendment, and that the measure of compensation was the value of the property

taken, saying at 267 of 328 U.S., at page 1068 of 66 S.Ct.: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine." Under the decisions it is of no moment whether the taking is by physical action of the Government, or by means of condemnation proceedings. The measure of compensation is the same; only the procedure differs. So, in Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637, the court said: "The compensation which he may obtain in such a proceeding [suit under the Tucker Act] will be the same as that which he might have been awarded had the defendants instituted the condemnation proceedings which it is contended the statute requires." See also United States v. Pewee Coal Co., 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809; United States v. Toronto, Hamilton & Buffalo Nav. Co., 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195.

 Thus, it appears clear that when the Government took possession of the building and began to take over the space occupied by the tenant Intertype Co., it was exercising its rightful power of eminent domain, and became liable, the very moment it entered upon the physical taking and interference, to make Intertype whole because of those acts. The measure of that compensation is the market value of what the tenant has lost. As in Campbell v. United States, supra [266 U.S. 368, 45 S.Ct. 116], upon the actual taking, the tenant "became entitled to have the just compensation safeguarded by the Fifth Amendment to the Constitution; that is, the value of the land taken and the damages inflicted by the taking—such a sum as would put him in as good a position pecuniarily as he would have been if his property had not been taken. Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 67 L.Ed. 664. *But he was not entitled to have more than that.*" (Emphasis supplied.)

The moment the physical taking began, a servitude was imposed on the property, constituting an appropriation

of it. Whether the Government intended to appropriate unto itself a permanent or a temporary right, there was nevertheless a taking, and, whenever there is a taking within the meaning of the provisions of the Constitution, the owner may recover just compensation. Inasmuch as the measure of compensation is the same, whether one whose property has been taken is suing the United States under the Tucker Act, 28 U.S.C.A. § 1346, or whether the compensation is determined in a condemnation suit, is immaterial; the measure of recovery is the same.

█ It appears here that Intertype has recovered a judgment for its compensation in a condemnation suit in the sum of $50,000. It must be assumed that the district court, in determining the compensation to be allowed Intertype in the condemnation proceeding, allowed all damages that might properly have been allowed as compensation to the owner, but whether so or not, that factor is of no importance here. Now Intertype claims, as additional damages against its landlord for the taking, on the theory of legal eviction, the cost of moving and similar items. This, as we said in the prior decision, was an attempt to add to just compensation something that the law does not allow.

When the Government began to exercise its physical control over the space occupied by Intertype, its acts then and thereafter were those of the sovereign in pursuing its power of eminent domain, for which there is no liability other than that allowed by law of just compensation to the owner for what he has lost. What might have been the right of Intertype to recover, had the physical taking been undertaken by a private party, is wholly immaterial. It is sufficient that, when we bear in mind that taking by the sovereign may be a physical taking or one effected by means of condemnation, all the acts done in pursuance of the Government's activities from and after the beginning of its taking, are such as can furnish no compensation to Intertype other than or beyond just compensation for the leasehold interest. This

was the extent of our previous holding and to it we adhere.

█ As we said in our original opinion, United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311; United States v. Petty Motor Company, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729, and United States v. Westinghouse Elec. & Mfg. Co., 339 U.S. 261, 70 S.Ct. 644, 94 L.Ed. 816, are fully determinative of the rights of a lessee whose premises are taken over by the Government. From these three cases it is apparent that if the Government takes over only a portion of a lease, then the cost of removal may be considered in determination of just compensation. If, however, it seizes the entire lease, such consequential losses are not to be considered. If the Government originally takes only a part of the lease with the option to subject the remainder also, but there is a possibility it will not take the remainder, and the rights of the lessee will revert, the matter of the allowance of costs of removal may be considered, but judgment withheld until the fact is determined. This is the doctrine of the Westinghouse case. Because plaintiff's lease had not expired and the Government's taking did not extend until the expiration of that lease, we originally held the counter-claim of Intertype premature. Inasmuch as it now appears, however, that the entire lease has been taken, the prematurity has come to an end and Intertype's just compensation is governed by the Petty case.

█ What we have said concerning what is to be included in a determination of just compensation to the owner, making him whole, is not intended to be determinative of the issues presented in this case, but is added to illustrate and reinforce our previous conclusion and our present one to the effect that when the Government, by physical taking or condemnation, enters upon the premises of a private party, the acts done by it are done in its sovereign capacity in the exercise of the right of eminent domain; that compensation for those acts is not to be determined by the measure of the lessor's duties under a lease, but that the

acts of the sovereign in subjecting private property to Government control are above all private rights and private interests and superior to the rights of private parties, provided that in the end just compensation is paid the party whose property is taken. By no sophistry of logic can we declare that when the Government began to take over plaintiff's property the fact that plaintiff's landlord did not object to, interfere with or prevent the action of the Government, created liability upon the part of that landlord. The latter was powerless to act as against the Government. The Government had the sovereign power to act against both landlord and the lessee; it alone was liable to make the parties whole for what it has taken. Intertype was evicted not by Clark-Congress, but by the Government. Everything complained of arose out of the acts of the sovereign in reducing to its use under the right of eminent domain the premises occupied by plaintiff. It had its cause of action for just compensation. It might have sued immediately under the Tucker Act if it desired, and the measure of its damages would have been the same—just compensation—which does not include, under the authorities cited, the cost of removal and other such consequential items.

The judgment is reversed.