David WOLCOTT, Individually and as Executor of the Estate of Albertha Wolcott, Deceased, Plaintiff,

v.

Waldo HUTCHINS, Jr., Defendant.

No. 65 Civ. 3101.

United States District Court
S. D. New York.

Feb. 13, 1968.

Robert E. Connolley, New York City, for plaintiff.

Rein, Mound & Cotton and Irving Smith, Jr., New York City, for defendant.

MANSFIELD, District Judge.

In his own behalf and as Executor of the Estate of Albertha Wolcott (Albertha), David Wolcott (David) brings this diversity action demanding that Waldo Hutchins, Jr. (Hutchins) be made a constructive trustee for plaintiff's benefit of assets of the Estate of Augustus W. Hutchins (Testator) that defendant Hutchins now possesses or may in the future possess. David asserts that Hutchins procured the making and the execution of Testator's will by fraud and undue influence, and thereby deprived David and Albertha of benefits that they would have inherited under an earlier will executed by the Testator in 1921 (Complaint, Par. FOURTH).

Hutchins moves for summary judgment, Rule 56, F.R.Civ.P., on the ground that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. Specifically, he asserts the defenses of res judicata, collateral estoppel and release as against David's individual claim. In addition, he asserts the Statute of Limitations as against the claims made by David individually and as executor.

The present proceeding appears to be one more step in an apparently endless saga generated by David's determination to prosecute a thoroughly, and repeatedly, discredited claim. The pertinent facts as revealed by the papers are as follows:

Neither David nor his deceased mother, Albertha, were blood relatives or descendants of the Testator or of any of the Testator's kin. Albertha Wolcott was the wife of Charles M. Wolcott (Charles), the Testator's nephew. David is her son by a prior marriage. Following Albertha's marriage to Charles, the latter adopted David, his stepson.

In 1921 the Testator made a will which, after certain specific bequests, divided his residuary estate into three parts, each of which was to be placed in a separate trust. The income from the first trust (one-half of the residuary estate) was to go to the Testator's wife and upon her death in specific shares to Julia (his sister), Julia II (his niece), Elizabeth (his niece) and Charles (his nephew). Upon Elizabeth's death, the trust was to terminate and the principal to go to the Testator's sister Julia, if living, and if not living, to her "descendants per stirpes and not per capita". The second trust (one-quarter of the residuary estate), which was measured by the lives of the Testator's nieces Elizabeth and Julia II, likewise gave the income in specified shares to the Testator's sister Julia, the two nieces and the nephew Charles, subject to the provision that upon the death of the survivor of Elizabeth and Julia II, the principal was to go to Testator's sister Julia, if living, and if not living, to her "descendants per stirpes and not per capita". The third trust (one-quarter of the residuary estate), which was measured by the lives of the Testator's nephew Waldo Hutchins, Jr. (defendant herein) and his niece Margaret, provided for distribution of shares of the income to Waldo, Sr., Waldo, Jr. and Margaret, and upon the death of the survivor of Margaret and Waldo, Jr., the trust would terminate and the principal go to Waldo, Sr., if living, and if not living, to his "descendants per stirpes and not per capita".

Thus, under the 1921 will no provision was made for Charles' wife, Albertha, or his adopted stepson, David; and although Charles was to be an income beneficiary of certain trusts, he would be entitled to principal only if he survived his mother Julia (Testator's sister) and his own two sisters, Elizabeth and Julia II, both of whom he predeceased.

Charles and Julia (the Testator's sister) predeceased the Testator, Charles dying in August 1942. In November, 1942, Testator made a will which, like his 1921 will, made no provision for Albertha or David, neither of whom were related to him by blood. After providing for various specific legacies and bequests, the 1942 will divided the residuary estate into eight shares. Four of the shares were placed in trust, the income to go to the Testator's widow for life, and, upon her death, the income from two shares to go to the Testator's niece Elizabeth for

life, and the income from the remaining two shares to his other niece Julia II for life, with the remainders bequeathed over to their respective heirs and next of kin per stirpes. One of the remaining four shares of the residuary estate was placed in trust for each of the Testator's relatives for life: (1) his niece Elizabeth; (2) his niece Julia II; (3) his niece Margaret J. Hutchins; and (4) Waldo Hutchins, Jr., the remainders to go to their respective heirs and next of kin in equal shares per stirpes and not per capita.

The Testator died on February 19, 1948. His 1942 will was admitted to probate in the Surrogate's Court, New York County, and Letters Testamentary were issued on March 4, 1948 to Hutchins, the only executor qualifying who also became one of the trustees.

David and Albertha were notified of the probate proceedings and consulted counsel as to their interests in the estate. In a letter from her attorney, dated March 30, 1948 (Ex. 1, Berger Affidavit), Albertha was apprised of the existence of the 1921 will. On September 3, 1949, Albertha wrote to Hutchins:

"Not content with ignoring me in the Will, *which you dictated,* you even took away the $3000 a year Uncle Augustus was giving me, without even notifying me that it would no longer be forthcoming. This small amount was certainly no serious drain on a ten million dollar estate.

"A great injustice has been done me, and I am asking you, as Trustee, to rectify it." (Emphasis added) (Ex. 5, Berger Affidavit).

In his reply, Hutchins informed Albertha that the pattern of the will had been carefully laid out, and "was the product solely of his own deliberations." (Ex. 6, Berger Affidavit).

In 1948, David also had been informed of his status under the 1921 will. In re Hutchins, 199 N.Y.S.2d 528, 530 (Surr. Ct.1960). After learning that he had no interest in the estate, David, through his attorneys, negotiated with Hutchins for a settlement of his claims. An agreement, dated April 29, 1948, was reached under which David received 600 shares of Crum & Forster 8% preferred stock, having a value of $75,000. In consideration, David

"remised, released and forever discharged * * * Waldo Hutchins, Jr., Estate of Augustus S. Hutchins, Deceased, and Waldo Hutchins, Jr., as Executor of the Will of Augustus S. Hutchins, Deceased, * * * of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, in admiralty, or in equity, which against them or any of them, I ever had, now have, or which I or my heirs, executors, or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause of thing whatsoever, relating to said Estate of Augustus S. Hutchins, deceased, or to his said will, or any trust or other fund thereby created or referred to therein." (Ex. 3, Berger Affidavit).

The release was accompanied by a letter in which David agreed not to contest the probate of the will, or assert any claim against the estate or other fund under the will or any remainder interest therein or against any beneficiary. He also expressed a willingness to execute any and all documents necessary to give effect to his agreement. (Ex. 4, Berger Affidavit).

In October, 1958, in a Surrogate's Court proceeding to settle the accounts of the Trustees appointed by Testator's will and for the payment of Trustees' commissions, David filed objections to the account, and sought to set aside the 1948 release and to share in the estate. The Surrogate ordered hearings lasting three days, pursuant to which he upheld the validity of the release to the extent of precluding David from asserting

claims against the estate and from asserting any rights against Hutchins, as executor or trustee, or any beneficiary under the will. 23 Misc.2d 565, 199 N.Y.S.2d 528 (Surr.Ct.1960). This decision was affirmed by the Appellate Division, First Department, 12 A.D.2d 484, 209 N.Y.S.2d 269 (1960), and petitions to appeal to the Court of Appeals were rejected by both the Appellate Division and the Court of Appeals. 12 A.D.2d 484, 209 N.Y.S.2d 269; 9 N.Y.2d 611, 215 N.Y.S.2d 1025, 174 N.E.2d 924; 9 N.Y.2d 1015, 218 N.Y.S.2d 1025, 176 N.E.2d 594 (1961).

In 1964, three years after the termination of these protracted and thoroughly unsuccessful proceedings in the New York state courts, David resorted to this Court, instituting a diversity action against Hutchins, individually, as Trustee, and as Executor of Testator's estate, and against the other beneficiaries under Testator's 1942 will. In the action, David asserted that the relations between Testator and plaintiff were such as to indicate that David should not have been excluded from the 1942 will. Hutchins, in his various capacities, was alleged to have taken part in a fraudulent conspiracy that included procuring David's release for a nominal consideration in violation of Hutchins' fiduciary duties to the estate. Recovery was sought in the amount of $5 million.

On a motion for summary judgment, Judge Bonsal held that David's attack on the 1948 release was barred by the doctrines of res judicata and collateral estoppel, because the Surrogate's decision and the subsequent litigation precluded relitigation of the settlement's validity, regardless of the theory upon which plaintiff was asserting. Wolcott v. Hutchins, 245 F.Supp. 578 (S.D.N.Y. 1965). In the action, David also argued that the conspiracy included undue influence exercised upon the Testator to exclude David from the 1942 will. This contention was expressly rejected on the ground that the claim of undue influence could only be raised at the time of probate, and that David, as he conceded, had given up his right to object to probate by virtue of the 1948 settlement. 245 F.Supp. at 581 n. 1. In open court, this decision was affirmed. 365 F.2d 833 (2d Cir. 1966) (Mem.).

In October, 1965, undaunted David and his mother, Albertha, since deceased, brought the present diversity action alleging that Hutchins exercised undue influence and fraud upon the 86-year old Testator in the making of the 1942 will, with the effect that plaintiffs were deprived of substantial inheritance upon the Testator's 1921 will. Specifically, it is claimed, upon information and belief (Par. SEVENTH), that Testator instructed Hutchins to draw up a will providing for either an outright bequest of one-third of the trust funds to plaintiffs, or a life estate in trust for Albertha, with remainder to her heirs and next of kin, i. e., plaintiff or his heirs; and that Hutchins did not follow the Testator's instructions but instead omitted any such provision, inducing the Testator to sign the 1948 will under false pretenses that Testator's intentions had been carried out.

Hutchins contends that Judge Bonsal's express ruling that the release precluded David from asserting undue influence in connection with the preparation of the 1942 will binds the parties in the present action on the grounds of res judicata and collateral estoppel. David urges that his theory in the first action was grounded upon Hutchins' breach of his fiduciary duties to the estate in procuring a release that prevented David from asserting his rights of inheritance under the will, while the present claim is based upon Hutchins' interference with David's advantageous relationship with the Testator. From this, David asks the Court to conclude that, since different causes of action were asserted in the two suits, the doctrine of res judicata is inapplicable.

However, this ignores the fact that in the earlier cause of action, David asserted a claim that was wholly independent of Hutchins' position qua executor, namely, exercising undue influence upon the Testator to deprive David of

benefits under the 1942 will. Judge Bonsal's determination, on a motion for summary judgment, that David's failure to raise the claim at probate precluded his undue influence claim is a determination on the merits, requiring application of the res judicata doctrine. Wahlgren v. Standard Oil Co. of New Jersey, 58 F.Supp. 783 (S.D.N.Y.1944), affd. per curiam, 152 F.2d 106 (2d Cir.1945); see Miller v. National City Bank of New York, 166 F.2d 723 (2d Cir.1948); 1B Moore, Federal Practice ¶ 0.409[1].

David seeks to avoid the principle of res judicata on the ground that there are material differences between the prior and present actions, pointing to the fact that the prior action was a suit for damages against a number of alleged conspirators based on a claim of undue influence, whereas the present suit is against an individual wrongdoer, in which plaintiff seeks to impress a constructive trust on grounds not only of undue influence but also of fraud and misrepresentation. All of these arguments are meritless and must be rejected.

■ Since conspiracy is not actionable per se, the application of res judicata is not thwarted merely because plaintiff first joins defendant with others and thereafter pursues him individually. Koblitz v. Baltimore & O.R.R., 164 F. Supp. 367, 371 (S.D.N.Y.1958), affd., 266 F.2d 320 (2d Cir.), cert denied, 361 U.S. 830, 80 S.Ct. 80, 4 L.Ed.2d 72 (1959); Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464 (3d Cir.), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951).

■ David's right allegedly invaded— unlawful interference with the Testator's intention in the making of his will—is identical with the right asserted and decided by Judge Bonsal. That David orginally sought money damages in the first litigation and now desires to impress a constructive trust (which even he concedes is in essence a damage remedy, Plf's Brief, p. 1) is an insignificant difference. Plaintiff cannot get two bites at the cherry by bringing the same cause of action first on the law side of the

Court's jurisdiction and thereafter on the equity side. 1B Moore, Federal Practice ¶ 0.410[1].

■■ The fact that David now adds fraud and misrepresentation to his earlier claim of undue influence, does not prevent the application of the doctrine. We are dealing with estoppel by judgment that concludes the parties both as to those matters actually litigated and those which might have been raised with respect to the same cause of action. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297 (1941). In the present case, plaintiff alleges that he has suffered the identical injury which he charged in the prior action. However, he is seeking to avoid the bar by pointing out that the means by which defendant inflicted the injury are different. Stripped of verbiage the substance of David's prior and present causes of action, however, is one and the same. As Judge Lehman, quoting from Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069 (1927), stated in De Coss v. Turner & Blanchard, Inc., 267 N.Y. 207, 196 N.E. 28 (1935):

" 'A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong.' " (196 N.E. at 30)

The leading case of Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464, 470 (3d Cir.1950), and commentators, e. g., James, Civil Procedure § 11.13 (1965), likewise support the conclusion that David, having had his day in court on the undue influence contention, is now precluded from asserting fraud as well. The right that Hutchins is alleged to have invaded is identical to that urged before Judge Bonsal; the operative facts causing the injury occurred, if at all, in the same short period of time when the

1942 will was made and executed; David's injury, whether brought about by one theory or the other, is identical; the relief that either theory permits is the same; and David, by his own admission, was in the possession of facts necessary to urge his fraud contention before Judge Bonsal. Under the circumstances, the Court finds that there is no good and sufficient reason to justify allowing David to split up his cause of action. The interest in avoiding prolonged vexatious litigation and harassment demand that David's individual claim be dismissed.

■ Hutchins also contends that the Statute of Limitations bars both David's individual and representative claims. His argument is based upon § 218(a) [1] of the New York Civil Practice Law and Rules which provides that if an action was barred on September 1, 1963, the date the new provisions went into effect, it remains expired. The gist of plaintiff's claim is an interference with the Testator's intent to benefit him and Albertha, and the relief sought is the impression of a constructive trust upon Hutchins. See Latham v. Father Divine, 299 N.Y. 22, 85 N.E.2d 168 (1949). Under section 53 [2] of the Civil Practice Act, an action to impress a constructive trust was subject to a 10-year limitation. Scheuer v. Scheuer, 308 N.Y. 447, 126 N.E.2d 555 (1955); Saldi v. Saldi, 32 Misc.2d 516, 224 N.Y.S.2d 114 (Sup.Ct.1961). David argues that since he is suing to remedy the fraud practiced upon the Testator, the action accrued six years after the discovery of the fraud by him. § 48(5). [3] While the matter is not free from doubt, see Scheuer v. Scheuer, supra, the six-year fraud statute rather than the 10-year equity statute would appear to

apply. Erbe v. Lincoln Rochester Trust Co., 3 N.Y.2d 321, 165 N.Y.S.2d 107, 144 N.E.2d 78 (1957); Clavin v. Clavin, 41 N.Y.S.2d 377 (Sup.Ct.1943). However, even if it be assumed that the fraud statute is applicable, the record reveals that long prior to six years before the institution of the present suit at least Albertha was aware of the essential facts now relied upon in support of the charge of fraud.

David seeks to avoid the time bar by now contending that it was only after taking Hutchins' deposition on February 9, 1965, that he or Albertha discovered that Hutchins had drawn the 1942 will stating (Affidavit of David Wolcott, pp. 2–3):

"This was the first time I learned of the fact that the defendant [Hutchins] had drawn the will and that there was reason to believe that the testator had instructed that the plan of the old will in toto be preserved, and the fact that the defendant, a principal beneficiary, executor and trustee, an attorney in a confidential relationship with the Testator, had drawn the will and that there was proof that there was no-one else had participated in the drawing of the will and defendant had been present at the execution of it."

The record reveals, however, that on September 3, 1949, Albertha wrote a letter, a portion of which is quoted above, to Hutchins at his law office, 110 William Street, where he had practiced law with his uncle, the Testator, levelling a veiled claim of fraud against Hutchins and acknowledging that she was aware of the fact that he had prepared the Testator's will, stating:

"Not content with ignoring me in the will, which you dictated, you even took

---

1. "Nothing in this article shall authorize any action to be commenced which is barred when this article becomes effective, except insofar as the right to commence the action may be revived by an acknowledgment or payment."

2. "An action, the limitation of which is not specifically prescribed in this article, must be commenced within ten years after the cause of action accrues."

3. "Actions to be commenced within six years.

\* \* \* \* \*

"5. An action to procure a judgment on the ground of fraud. The cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud."

away the $3000 a year * * *. A great injustice has been done me, and I am asking you, as trustee, to rectify it."

In his reply Hutchins did not deny that he had dictated the will (Ex. 6, Berger Affidavit). Since Albertha was aware in 1949, more than 16 years before commencement of this action, of facts allegedly constituting the fraud, David's claim as executor of her estate is barred. Erbe v. Lincoln Rochester Trust Co., 3 N.Y.2d 321, 165 N.Y.S.2d 107, 144 N.E.2d 78 (1957); Sielcken-Schwarz v. American Factors, Ltd., 265 N.Y. 239, 192 N.E. 307 (1934).

Nor is there anything new in David's statement that Hutchins testified to the effect that the Testator, in asking him in 1942 to redraw the will, had stated that he wanted "Margaret and myself [Hutchins] to have the Hutchins share; and the Wolcott shares to be in trust for the two girls, Elizabeth and Julia". This testimony, far from supporting a claim of fraud, negates it. It confirms the fact that upon the death of his nephew Charles, the Testator was following the earlier pattern of bequeathing the trust funds to his blood relatives on both the Wolcott and Hutchins' sides.

Lastly, the inescapable fact is that the Testator had not provided for his nephew's wife, Albertha, or adopted stepson, David, in his 1921 will and he made no provision for them in his 1942 will. Under the 1921 will no principal under the so-called "Wolcott" trusts would go to Charles (as a "descendant" of Julia, the Testator's sister) unless he survived his own sisters, Elizabeth and Julia II, which he did not. Charles having predeceased his two sisters, Charles' wife, Albertha, would not in any event be entitled to share in the distribution of the principal of the Wolcott trusts, since she was not a "descendant" of Julia, the Testator's sister. Under the law as it existed at the time of the Testator's death, see In re Hodges' Will, 294 N.Y. 58, 60 N.E.2d 540 (1945); In re Hall's Estate, 234 App. Div. 151, 254 N.Y.S. 564 (1931), affd., 259 N.Y. 637, 182 N.E. 214 (1932);

Hopkins v. Hopkins, 202 App.Div. 606, 195 N.Y.S. 605 (Sup.Ct.1922), affd., 236 N.Y. 545, 142 N.E. 277 (1923), it also seems highly unlikely that David could qualify as a "descendant" of Julia Hutchins. In view of the fact that David's claim is barred by res judicata, however, it becomes unnecessary to decide that issue.

Accordingly, the defendant's motion for summary judgment is granted.

So ordered.