**BRAZOSPORT TOWING CO., INC.**

v.

**3,838 TONS OF SORGHUM LADEN ON BOARD the BARGE NL NO. 703, OFFICIAL NO. 291237.**

**No. C.A. G–82–211.**

United States District Court, S.D. Texas, Galveston Division.

Aug. 16, 1984.

**12**

L. Glen Kratochvil, Schirmery & Kratochvil, Houston, Tex., for plaintiff.

Martin B. Mulroy, Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, Houston, Tex., for defendant.

### ORDER

HUGH GIBSON, District Judge.

Before the court is Compania Nacional de Subsistencias Populares' (Conasupo) mo-

tion for relief from judgment. The parties appeared and presented arguments and authorities to the court on July 30, 1984. Upon consideration of the same the Court finds as follows:

Suit was filed on June 25, 1982, by Brazosport for the recovery of freight charges. Plaintiff asserted a maritime lien and brought suit *in rem* against the cargo of 3,838 tons of sorghum. On July 7, 1982, plaintiff made a motion for interlocutory sale and the *res* was sold on July 16, 1982. On July 27, 1982, defendant having failed to answer or otherwise plead, the Court entered a default judgment in favor of plaintiff. At that time there was nothing in the Court's record to indicate that the owner of the cargo, Conasupo, was an instrumentality of the Mexican Government.

Conasupo alleges that the sorghum was carried from Brownsville, Texas, to Alvarado, Mexico, on May 18, 1980 pursuant to a contract dated April 29, 1981 between Conasupo and Flumgo, S.A. De C.V. hereinafter "FLUMGO". The contract, executed in Mexico, identifies petitioner as a decentralized public agency of the Federal Mexican Government. Under the contract Conasupo obligated to pay "the carrier" FLUMGO within five working days following delivery. Any dispute between the parties was to be resolved in the appropriate Federal Courts in Mexico City, Federal District. Intervenor further urges that under Mexican law the contract was not assignable.

Brazosport, acting under color of an assignment from FLUMGO, transported the cargo to Mexico and when it was not paid returned the cargo to the port of Galveston. Conasupo refused to pay Brazosport under the invoice presented on April 20, 1982 by Brazosport, because it was in Brazosport's name and not in the name of FLUMGO, and under the Special Power dated March 8, 1982 because it failed to meet the requirements of Mexican Law. On June 21, 1982 Conasupo paid FLUMGO the freight in the amount of $76,012.04.

The notice of this suit was mailed June 25, 1982, in English and addressed to "AV Juarez No. 925° Piso, Mexico, D.F." It was not directed to the attention of any individual. Conasupo is located at address Number 92 on Avenida Juarez. The letter was received July 1, 1982 and passed to several individuals (who could not read English) before it reached the appropriate party in October of 1982.

Conasupo has made a motion for relief from the judgment and to declare the judgment void for want of subject matter jurisdiction under the Foreign Sovereign Immunities Act. (FSIA) 28 U.S.C. § 1602, *et seq.* (1976). Immunity extended to foreign states under FSIA extends to foreign states' political subdivisions, agencies, and instrumentalities. *Jet Line Services, Inc. v. M/V MARSA EL HARIGA*, 462 F.Supp. 1165, 1171 (D.Md.1978), citing *Gray v. Permanent Mission of the People's Republic of the Congo to the United Nations*, 443 F.Supp. 816, 820 (S.D.N.Y.1978).

Section 1605(b) of the Act provides,

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: Provided, That—

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit—unless the party was unaware that the vessel or cargo of a foreign state was involved, in which event the service of process of arrest shall be deemed to constitute valid delivery of such notice; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in subsection (b)(1) of this section or, in the case of a party who was unaware that the vessel or cargo of a foreign state was in-

volved, of the date such party determined the existence of the foreign state's interest.

Whenever notice is delivered under subsection (b)(1) of this section, the maritime lien shall thereafter be deemed to be an in personam claim against the foreign state which at that time owns the vessel or cargo involved: Provided, That a court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose, such value to be determined as of the time notice is served under (b)(1) of this section.

Unless special arrangements have been made, service and notice under the FSIA Section 1608 can be accomplished by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. If service cannot be accomplished by the foregoing within thirty (30) days, the clerk may dispatch two copies of the documents to the Secretary of State who shall transmit one copy of the papers through diplomatic channels to the foreign state. 28 U.S.C. §§ 1608(a), 1608(e).

In chambers Plaintiff did not contest petitioner's status nor its ownership of the *res*, but asserted that at the inception of this suit he was not aware that Conasupo was a Mexican government agency. Petitioner presented evidence that plaintiff should have known that because plaintiff's contract with FLUMGO was represented as an assignment and the assigned contract identified petitioner as an instrumentality of the Mexican government. Though in personam jurisdiction over the sovereign is not forfeited when the party attaching the *res* could not have known that the owner was a foreign sovereign, such cases are clearly recognized as being rare. *Jet Line Services, Inc. v. M/V MARSA EL HARIGA*, supra, 462 F.Supp. 1176.

If a foreign sovereign engages in commercial activity which bears the requisite relation to the U.S. it is not entitled to immunity and the district court has subject matter jurisdiction over the claim. *Texas Trading Mill Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2nd Cir.) *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Once an exception to the foreign sovereign immunity has been alleged the burden of establishing immunity to the Court's jurisdiction is on the foreign state. *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1378 (5th Cir.1980); *Matter of Sedco, Inc.*, 543 F.Supp. 561, 564 (S.D.Tx.1982); *DeSanchez v. Banco De Nicaragua*, 515 F.Supp. 900, 903 (E.D.La.1981); *see Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 253 (7th Cir.1983). If none of the exceptions to immunity under the FSIA are present, "the district court lacks both statutory subject matter jurisdiction and personal jurisdiction." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 489, 103 S.Ct. 1962, 1969, 76 L.Ed.2d 81, 89 (1983). *Jet Line Services, Inc. v. M/V MARSA EL HARIGA*, supra, 462 F.Supp. 1165.

Section 1605(a)(2) defines the scope of commercial activity under the Act by providing that a foreign state shall not be immune from the jurisdiction of the courts of the United States in any case,

in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Under the Act, "a commercial activity means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of

conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The focus of the exception to immunity, "is not on whether the defendant generally engages in commercial enterprise or activity ... rather, it is on whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Arango v. Guzman Travel Advisors Corp., supra,* 621 F.2d 1379. For example, mineral extraction and the recruitment or hiring of American citizens in the U.S. fall within the definition of "commercial activity". *Broadbent v. Organization of American States,* 628 F.2d 27, 33–34 (D.C.Cir. 1980).

To constitute an exception under § 1605, the "commercial activity" must have sufficient contacts to meet the due process requirement of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Further there must be a nexus between the "commercial activity" and the claim asserted. *Texas Trading v. Federal Republic of Nigeria, supra* 647 F.2d 300.

In the case at bar petitioner Conasupo committed no acts with relationship to plaintiff's claim that constituted commercial activity within the U.S. Conasupo contracted with FLUMGO, a Mexican corporation, to transport the sorghum. Conasupo's contract with FLUMGO was executed in Mexico and governed by Mexican law. Petitioner's transactions with plaintiff Brazosport occurred in Mexico.

In *Ministry of Supply, Cairo v. Universe Tankships, Inc.,* 708 F.2d 80 (2d. Cir.1983) a consignee of cargo, an Egyptian government agency, was found to be engaged in commercial activity in the U.S. The Egyptian agency purchased commodities in the U.S. and arranged for its carriage to Egypt under COGSA bills of lading. *Id.* at 84. The Carriage of Goods by Sea Act defines "carriage of goods" as covering "the period from the time when the goods are loaded on to the time when

they are discharged." 46 U.S.C. § 1301(e). The Court held that the sovereign's agency was not entitled to immunity in a demurrage claim when the agency wrongfully halted the discharge of cargo at the Egyptian port and thus wrongfully denied the time charterer's use of the vessel.

In the instant case petitioner's contracted with a FLUMGO in Mexico for the transport of goods. Petitioner did not enter into any contract for carriage in the U.S., with U.S. parties, or under U.S. laws, as the Egyptian agency did in *Ministry of Supply, Cairo v. Universe Tankships, Inc., supra.* See also, *Gemini Shipping, Inc. v. Foreign Trade Org'n. for Chemicals & Foodstuffs,* 647 F.2d 317 (2d. Cir.1981).

Conasupo's only connection with the U.S. was that when Brazosport was not paid, Conasupo's cargo was reshipped to a U.S. port and seized. Conasupo urges that the cargo was to be delivered prepaid and it had no obligation to pay Brazosport. Clearly, the mere attachment of property of a foreign sovereign is insufficient to bring the sovereign within the jurisdiction of this court. See *Behring International, Inc. v. Imperial Iranian Air Force,* 475 F.Supp. 383, 393 (D.N.J.1979). The Court therefore concludes that petitioner was immune from suit under the FSIA and that the Court thereby acknowledged statutory subject matter and personal jurisdiction over petitioner Conasupo.

Petitioner has made motion under Rule 60(b)(4) Fed.R.Civ.P. to declare the judgment void; to vacate the judgment; and to retry this case. Petitioner's motion was filed on November 14, 1983, sixteen (16) months after the entry of this Court's judgment.

Rule 60(b)(4) provides that on motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment if the judgment is void. The one year time limitation under Rule 60 to make motion for relief from judgment for mistake, newly discovered evidence, and fraud is inapplicable to instances of void judgments. A void

judgment is "a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside." *Jordon v. Gilligan,* 500 F.2d 701, 704 (6th Cir.1974); See 7 J. Moore, Federal Practice. 60.25[2] (2d Ed.1973).

 Federal courts have the power to determine their own jurisdiction and error in that determination will not render a judgment void unless the judgment is a clear usurpation of the court's power. *Lubben v. Selective Service System, Local Bd. No. 27,* 453 F.2d 645, 649 (1st Cir.1972). The remedy for error in jurisdictional determinations is appeal. *Jackson v. Irving Trust Co.,* 311 U.S. 494, 503, 61 S.Ct. 326, 330, 85 L.Ed. 297 (1941). See, *311 U.S. at 500,* 61 S.Ct. at 328, in which the court distinguishes the case where appeal was the remedy from *U.S. v. United States Fidelity & Guarantee Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940) in which the court found the judgment void for want of consent of the sovereign to be sued or of an attempt on the part of officials to waive the sovereign immunity of certain Indian nations. Default judgments entered without proper authority should, however, be set aside. *U.S. v. Melichar,* 56 F.R.D. 49, 50 (E.D.Wisc.1972).

In this instance no issue of jurisdiction over a foreign sovereign was presented to the Court. Under the FSIA, the seizure, sale of the *res,* and entry of judgment without notice were acts beyond the court's statutory subject matter jurisdiction and the petitioner was beyond the court's *in personam* jurisdiction. Further, a valid judgment cannot be rendered in an *in rem* proceeding if the court lacks jurisdiction over the *res. Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877); *Hicklin v. Edwards,* 226 F.2d 410 (8th Cir. 1955).

This Court further finds that petitioner has made motion within a reasonable time. Accordingly, the Court concludes that the final judgment entered in this matter on July 27, 1982 is void and is hereby vacated under Rule 60(b)(4). Petitioner is granted leave to answer and intervene. The Clerk is directed to reinstate this matter on the Court's docket for call to trial on the court's October/November docket.

Plaintiff shall deposit into the registry of the Court the value of the cargo at the time of sale, that being $226,500.00, within ten (10) days.